IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHRISTINA METTIAS, Individually and as Next Friend of Her Minor Son, N.M.,<br><br>      Plaintiffs,<br><br>  vs.<br><br>UNITED STATES OF AMERICA,<br><br>      Defendant. | Civ. No. 12-00527 ACK-KSC |

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS AS TO PLAINTIFFS' INFORMED CONSENT CLAIM

### PROCEDURAL BACKGROUND

On September 24, 2012, Plaintiff Christina Mettias, individually and as next friend of her minor son N.M. (collectively "Plaintiffs"), filed a Complaint against Defendant United States of America ("Government") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346 and 2671. (Doc. No. 1.)

On February 7, 2014, Plaintiffs filed a Motion for Leave to Amend the Complaint, which was referred to Magistrate Judge Chang. (Doc. No. 51.) On March 14, 2014, Magistrate Judge Chang issued an Order Granting Plaintiffs' Motion for Leave to Amend the Complaint. (Doc. No. 63.)

On April 1, 2014, Plaintiffs filed the operative

-1-

Amended Complaint. (Doc. No. 68.) The Amended Complaint contains

three claims for relief: (1) medical negligence; (2) negligent

infliction of emotional distress and loss of consortium; and (3)

failure to obtain informed consent. (Am. Compl. at 10-11.) With

respect to the informed consent claim, Plaintiffs specifically

allege that

> [p]rior to proceeding with the Roux en Y
> gastric bypass surgery, [the Government]
> failed to provide Ms. Mettias with
> information necessary for her to give
> informed consent to the procedure, and
> provided misleading and inappropriate
> information, in violation of the standard of
> care. A reasonable person in Ms. Mettias'
> position would not have consented to the
> procedure if properly informed.

(Id. ¶ 30.)

On June 27, 2014, the Government filed the instant

motion to dismiss for lack of subject matter jurisdiction

pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. No.

91.) Although the Government's motion seeks dismissal of the

entire Amended Complaint, its memorandum in support of the motion

(and its reply) only address whether Plaintiffs exhausted

administrative remedies as to their informed consent claim.

Accordingly, the Court construes the Government's motion as only

seeking dismissal of Plaintiffs' informed consent claim.

On July 31, 2014, Plaintiffs filed an opposition to the

Government's motion. (Doc. No. 93.)

On September 17, 2014, the Government filed a reply to

Plaintiffs' opposition. (Doc. No. 95.)[1]

The Court held a hearing regarding the Government's motion on September 29, 2014.

**FACTUAL BACKGROUND**[2]

**I.      Mettias Undergoes Gastric Bypass Surgery**

On March 19, 2010, Mettias's primary care physician referred her to the Bariatric Surgery Program at Tripler Army Medical Center ("Tripler"). (Am. Compl. ¶ 13.) Mettias followed up on the referral and sought enrollment in Tripler's LEAN Healthy Lifestyles Program ("LEAN Program"), which provides education, support, and behavioral counseling in connection with the Bariatric Surgery Program. (Id.)

On March 30, 2010, Mettias attended an informational meeting where Tripler documented that she weighed 221 pounds and had a body mass index ("BMI") of greater than 40. (Id. ¶ 14.) After further evaluation, Tripler accepted Mettias into the LEAN Program. (Id.)

---

[1]The Government's reply was untimely filed, in violation of the local rules. See D. Haw. Local Rule 7.4 ("Any reply in support of a motion set for hearing shall be served and filed by the moving party not less than fourteen (14) days prior to the date of hearing."). Nevertheless, the Court will consider the Government's reply because Plaintiffs expressed no opposition, and the Court finds no prejudice to Plaintiffs.

[2]The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

For the next five months, Mettias participated in the LEAN Program. (Id. ¶ 15.) By incorporating exercise, dietary changes, and behavioral modifications into her lifestyle, Mettias lost more than 30 pounds. (Id.) Despite Mettias's weight loss, Tripler recommended in September 2010 that she undergo Roux en Y gastric bypass ("RYGB") surgery. (Id. ¶ 16.) RYGB surgery is a form of bariatric surgery that reduces the size of the stomach by creating a small gastric pouch attached directly to the small intestine, leaving a larger gastric remnant. (Id.)

On September 27, 2010, Dr. John Payne, a Tripler surgeon, performed laparoscopic RYGB surgery on Mettias. (Id. ¶ 18.) At the time of surgery, Mettias weighed 189 pounds and had a BMI of 33.59. (Id.) According to Mettias, she was an inappropriate candidate for RYGB surgery because of her successful loss of some 30 pounds and because national medical standards dictate that RYGB surgery should be reserved for patients with a BMI of no less than 40, or no less than 35 if the patient has one or more weight-related diseases (e.g., hypertension, sleep apnea, or diabetes).

One week following her discharge from surgery, Mettias began suffering severe abdominal and chest pain. (Id. ¶ 20.) Mettias was readmitted to Tripler on October 11, 2010, and taken into surgery for a diagnostic laparoscopy, lysis of adhesions, and evacuation of a large intra-abdominal hematoma. (Id.)

On October 24, 2010, Mettias was again admitted to Tripler for left flank and shoulder pain, which was caused by fluid accumulation in her upper abdomen. (Id. ¶ 21.) Mettias underwent a procedure at Tripler to place a drainage tube in the area of the fluid collection. (Id.)

On January 6, 2011, Mettias underwent surgery at Tripler for a fourth time, after fluid reaccumulated in her abdomen. (Id. ¶ 22.) A diagnostic laparoscopy revealed severe adhesions in the abdomen, liver, diaphragm, gastric pouch, and gastric remnant (where necrosis was also noted). (Id.) During the procedure to repair the gastric pouch, Mettias's esophagus and diaphragm were punctured. (Id.) Following this surgery, Mettias was admitted to Tripler's Intensive Care Unit ("ICU") after suffering life-threatening conditions such as bowel perforation, sepsis, and sub-hepatic abscess. (Id. ¶ 23.) Mettias remained in the ICU until February 2, 2011. (Id.)

After her discharge from the ICU, Mettias was transferred to Tripler's general surgical ward. (Id.) Because she continued to have complications related to the esophageal perforation, Mettias was subsequently transferred on February 22, 2011, to Pali Momi Medical Center where a non-Tripler surgeon placed a stent in her esophagus. (Id.) After the esophageal stent placement surgery, Mettias remained in the hospital until she was discharged on March 15, 2011. (Id.)

From March 2011 to September 2011, Mettias was
readmitted to Tripler numerous times for severe pain,
dehydration, nausea, vomiting, and diarrhea. (<u>Id.</u> ¶ 24.) Mettias
has experienced chronic nutritional deficiencies related to her
inability to swallow and, as a result, her weight has dropped to
as low as 103 pounds. (<u>Id.</u>) According to Mettias, she will
require additional surgical procedures to address issues with her
esophagus, as well as other complications stemming from the RYGB
surgery. (<u>Id.</u>)

## II. Plaintiffs File Administrative Claim

On November 3, 2011, Plaintiffs filed two SF-95
administrative claim forms, one for Mettias individually and one
on behalf of her minor son N.M., with Tripler. (Mot. Exs. A1 &
A2.) Both forms state that "negligent medical and surgical
procedures by John Payne, M.D., et al." caused Mettias to suffer
a variety of medical complications. (<u>Id.</u>)

Plaintiffs attached three-page "supplements" to both
SF-95 claim forms. (<u>Id.</u>) In these supplements, Plaintiffs first
noted that Mettias had lost 30 pounds as recommended and, in
summary, alleged that "Tripler Army Medical Center, Dr. John
Payne and staff deviated from the standard of care [by]
[p]erforming Roux en Y surgery on a patient who failed to meet
medical guidelines for gastric bypass surgery (pre-operative
weight of 189 pounds, BMI of 34.3, and no comorbid conditions)."

(Id.)

On November 22, 2011, Tripler sent a letter to
Plaintiffs' counsel acknowledging receipt of the SF-95 claim
forms. (Opp. Ex. E.) That letter also requested Plaintiffs'
counsel to submit a written opinion of a qualified medical expert
addressing the following:

> (a) . . . [A]llegation(s) of negligence in
> the medical or surgical care of Christina
> [Mettias] by Tripler Army Medical Center
> personnel.
>
> (b) Any and all other allegations of
> negligence in the professional healthcare of
> Christina [Mettias].

(Id.)

On February 14, 2012, Plaintiffs' counsel sent an
opinion letter by Dr. Michael Leitman (dated January 9, 2012) to
Tripler. (Id. Ex. A.) This letter provides in relevant part:

> Roux en Y gastric bypass surgery is a high-risk
> surgery that can lead to extensive and
> debilitating complications. It is reserved for
> patients who, after a risk-benefit analysis is
> conducted, are not likely to benefit from
> alternative strategies but may benefit
> substantially from invasive surgery. In 1991,
> the National Institute of Health issued a
> position statement, which was echoed by the
> American Society of Bariatric Metabolic Surgery
> in approximately 2002, identifying appropriate
> candidates for gastric bypass surgery. Both
> position papers, which were clearly the
> standard in effect during the time of
> Christina's treatment at Tripler, dictate that
> the Roux en Y gastric bypass surgery should be
> reserved for patients with a BMI of no less
> than 40, and no less than 35 if other weight-
> related diseases (for example, hypertension,

sleep apnea, or diabetes) exist.

> . . . In light of her BMI on the date of her
> surgery, her consistent weight loss over a
> period of five months, and her successful
> adoption of a healthy lifestyle, Christina
> was not an appropriate candidate for Roux en
> Y gastric bypass surgery. . . . Because
> Christina did not meet the criteria for
> gastric bypass surgery, the decision to
> perform a laparoscopic Roux en Y gastric
> bypass surgery on Christina was a clear
> breach of the standard of care.

(<u>Id.</u> at 5-6.)

On September 24, 2012, after Tripler failed to make a
final disposition of Plaintiffs' administrative claims within six
months after the claims were filed, <u>see</u> 28 U.S.C. § 2675(a),
Plaintiffs filed their original Complaint in this Court.

## **STANDARD**

A court's subject matter jurisdiction may be challenged
under Federal Rule of Civil Procedure ("Rule") 12(b)(1). Such
challenges may be either "facial" or "factual." <u>Wolfe v.
Strankman</u>, 392 F.3d 358, 362 (9th Cir. 2004).

In a facial attack, "the challenger asserts that the
allegations contained in a complaint are insufficient on their
face to invoke federal jurisdiction." <u>Id</u>. (quoting <u>Safe Air for
Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004)). When
opposing a facial attack on subject matter jurisdiction, the
nonmoving party is not required to provide evidence outside the
pleadings. <u>Wolfe</u>, 392 F.3d at 362; <u>see</u> <u>Doe v. Holy See</u>, 557 F.3d

1066, 1073 (9th Cir. 2009) (treating defendant's challenge to subject matter jurisdiction as facial because defendant "introduced no evidence contesting any of the allegations" of the complaint). In deciding a facial Rule 12(b)(1) motion, the court must assume the plaintiff's allegations in the complaint to be true and draw all reasonable inferences in his favor. Wolfe, 392 F.3d at 362 (citations omitted).

By contrast, in a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. at 362 (quoting Safe Air, 373 F.3d at 1039). The moving party may bring a factual challenge to the court's subject matter jurisdiction by submitting affidavits or any other evidence properly before the court. The nonmoving party must then "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009) (citation omitted). In these circumstances, the court may look beyond the complaint without having to convert the motion into one for summary judgment. U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1200 n.2 (9th Cir. 2009). When deciding a factual challenge to the court's subject matter jurisdiction, the court "need not presume the truthfulness of the plaintiffs' allegations." Id.

In this case, the Government brings a factual challenge to the Court's subject matter jurisdiction, and attaches two declarations and eight exhibits to the instant motion.

## DISCUSSION

The issue presented by the instant motion is whether the Court lacks subject matter jurisdiction over Plaintiffs' informed consent claim because, in the Government's view, that claim was not presented to Tripler during the administrative claims process and, therefore, Plaintiffs failed to exhaust administrative remedies.

"In a claim for damages against the United States, an independent cause of action must first be submitted for administrative review before that claim can be filed in federal court." Goodman v. U.S., 298 F.3d 1048, 1054 (9th Cir. 2002) (citing 28 U.S.C. § 2675(a)). "Where such a claim is not first presented to the appropriate agency, the district court, pursuant to Federal Rule of Civil Procedure 12(b)(1), must dismiss the action for lack of subject matter jurisdiction." Id. at 1054-55 (citing McNeil v. U.S., 508 U.S. 106 (1993)).

The administrative claim requirement is not burdensome:

> . . . [T]he person injured, or his or her
> personal representative, need only file a
> brief notice or statement with the relevant
> federal agency containing a general
> description of the time, place, cause and
> general nature of the injury and the amounts
> of compensation demanded. See Warren v. U.S.
> Dep't. of Interior Bureau of Land Mgmt., 724

F.2d 776, 779 (9th Cir. 1984); <u>Avery v. U.S.</u>,
680 F.2d 608, 610 (9th Cir. 1982) ("[A]
skeletal claim form, containing only the bare
elements of notice of accident and injury and
a sum certain representing damages, suffices
to overcome an argument that jurisdiction is
lacking.").

<u>Id.</u> at 1055.

"Furthermore, the notice requirement under section 2675
is minimal, and a plaintiff's administrative claims are
sufficient even if a separate basis of liability arising out of
the same incident is pled in federal court." <u>Id.</u>; <u>see</u> <u>also</u> <u>Broudy</u>
<u>v. U.S.</u>, 722 F.2d 566, 568-69 (9th Cir. 1983) ("We see nothing in
section 2675(a) or the regulations which require the claimant to
state with great specificity the legal theories to be asserted in
the eventual FTCA action."); <u>Rooney v. U.S.</u>, 634 F.2d 1238, 1242
(9th Cir. 1980) ("The Government would have us also require a
claimant to state his legal theory for recovery. This we cannot
do."); <u>and</u> <u>Burchfield v. U.S.</u>, 168 F.3d 1252, 1255 (11th Cir.
1999) ("We do not require the claimant to provide the agency with
a preview of his or her lawsuit by reciting every possible theory
of recovery, or every factual detail that might be relevant. In
short, the amount of information required is 'minimal.'")
(internal citations omitted).

In <u>Goodman</u>, the Ninth Circuit was faced with the issue
of "whether an administrative claim that alleges negligent care
and treatment by hospital personnel necessarily presents an

informed consent claim for purposes of satisfying the notice requirements of section 2675(a)." Goodman, 298 F.3d at 1055. The Goodman court noted that "[t]he majority of circuits that have addressed the issue have held that to adequately exhaust administrative remedies with respect to an informed consent claim, a medical malpractice claim is not necessarily sufficient; instead, 'the administrative claim must narrate facts from which a legally trained reader would infer a failure to obtain informed consent.'" Id. (citing Murrey v. U.S., 73 F.3d 1448, 1453 (7th Cir. 1996) and Bush v. U.S., 703 F.2d 491, 495 (11th Cir. 1983)); see also Staggs v. U.S. ex rel. Dep't. of Health and Human Servs., 425 F.3d 881, 884-85 (rejecting the "view that an administrative claim for medical negligence necessarily includes [a claim for] lack of informed consent" and holding that "[n]othing in [plaintiff's] administrative claim suggests that [she] consented to a course of treatment or remained on such a course without being informed of her options and the risks").[3]

In Murrey, the Seventh Circuit held that an informed

_____

[3]Only the Fifth Circuit has found that "[b]y its very nature, the informed consent claim is included in the [plaintiff's] allegation of [medical] negligence in their administrative claim." Frantz v. U.S., 29 F.3d 222, 224 (5th Cir. 1994). Although a three-judge panel on the Fourth Circuit adopted the Frantz holding, see Drew v. U.S., 217 F.3d 193 (4th Cir. 2000), the Fourth Circuit subsequently vacated the three-judge panel's opinion upon granting en banc consideration, and summarily affirmed the district court's dismissal for lack of jurisdiction. Drew ex rel. Drew v. U.S., 231 F.3d 927 (4th Cir. 2000) (en banc).

consent claim is separate and independent from a general medical

negligence claim and that "to base a suit on lack of informed

consent [a plaintiff] was required to include, or at least allude

to, the issue of informed consent in the administrative claim."

Murrey, 73 F.3d at 1451.

Under Hawaii's informed consent statute,[4] a health

care provider must supply the following information to a patient

before obtaining that patient's consent to a proposed medical

treatment or procedure:

> (1) The condition to be treated;
> (2) A description of the proposed treatment
> or procedure;
> (3) The intended and anticipated results of
> the proposed treatment or procedure;
> (4) The recognized alternative treatments or
> procedures, including the option of not
> providing these treatments or procedures;
> (5) The recognized material risks of serious
> complications or mortality associated with:
> > (A) The proposed treatment or procedure;
> > (B) The recognized alternative
> > treatments or procedures; and
> > (C) Not undergoing any treatment or
> > procedure; and
> (6) The recognized benefits of the recognized
> alternative treatments or procedures.

H.R.S. § 671-3(b). The Hawaii Supreme Court has supplemented

§ 671-3 by "adopt[ing] the patient-oriented standard for

determining whether particular information must be disclosed to a

---

[4]The Ninth Circuit has held that "[i]n assessing the United
States' liability under the FTCA, [courts] are required to apply
the law of the state in which the alleged tort occurred." Conrad
v. U.S., 447 F.3d 760, 767 (9th Cir. 2006).

patient." Ray v. Kapiolani Medical Specialists, 125 Haw. 253, 267

(Haw. 2011). The Ray court explained that the

> dispositive inquiry regarding the physician's
> duty to disclose in an informed consent case,
> therefore, is not what the physician believes
> his or her patient needs to hear in order for
> the patient to make an informed and
> intelligent decision; the focus should be on
> what a reasonable person objectively needs to
> hear from his or her physician to allow the
> patient to make an informed and intelligent
> decision regarding proposed medical
> treatment.

Id. (quoting Carr v. Strode, 79 Haw. 475, 485-86 (Haw. 1995)).[5/]

Consistent with Hawaii law on the informed consent

doctrine, as well as Goodman and the cases cited favorably

therein, this Court concludes that Plaintiffs, during the

administrative claims process, put the Government on notice of

their informed consent claim and thus exhausted their

administrative remedies as to that claim.

In this case, as noted, Plaintiffs alleged in the

supplements attached to their SF-95 administrative claim forms

that "Tripler Army Medical Center, Dr. John Payne and staff

deviated from the standard of care [by] [p]erforming Roux en Y

surgery on a patient who failed to meet medical guidelines for

_____

[5/]The "patient-oriented" standard is an alternative to the
"physician-oriented" standard. The Hawaii Supreme Court has
stated that the physician-oriented standard looks at "what a
reasonable physician believes should be disclosed to a patient
prior to treatment in order for the patient to make an informed
and intelligent decision regarding a course of treatment or
surgery." Carr, 79 Haw. at 498.

gastric bypass surgery (pre-operative weight of 189 pounds, BMI of 34.3, and no comorbid conditions)." (Mot. Exs. A1 & A2.) Dr. Leitman's opinion letter (dated January 9, 2012), which Tripler specifically requested as part of the administrative claims process, expounds upon this allegation:

> Roux en Y gastric bypass surgery is a high-risk surgery that can lead to extensive and debilitating complications. It is reserved for patients who, after a risk-benefit analysis is conducted, are not likely to benefit from alternative strategies but may benefit substantially from invasive surgery. In 1991, the National Institute of Health issued a position statement, which was echoed by the American Society of Bariatric Metabolic Surgery in approximately 2002, identifying appropriate candidates for gastric bypass surgery. Both position papers, which were clearly the standard in effect during the time of Christina's treatment at Tripler, dictate that the Roux en Y gastric bypass surgery should be reserved for patients with a BMI of no less than 40, and no less than 35 if other weight-related diseases (for example, hypertension, sleep apnea, or diabetes) exist.

> In this case, Christina clearly was benefitting from the non-surgical interventions offered through Tripler's LEAN program. . . . In short, the LEAN program operated through Tripler's weight loss clinic was helping her to lose weight and to adopt a healthy lifestyle that would allow her to maintain the weight loss. At the time of her pre-operative visit with Dr. Payne, which was ten days before her scheduled surgery, Christina's BMI was 34.35. She did not suffer from any co-morbid conditions and therefore did not meet any of the criteria for gastric bypass surgery. Three days prior to surgery, Christina had another pre-operative visit with an anesthesiologist at Tripler, at which

time her BMI was documented to be 33.59. Not
only was her BMI again noted to be well below
the nationally-recognized baseline, her BMI
was consistently dropping through her
successful, non-surgical interventions. On
the day of surgery, the pre-operative nurse
and the anesthesiologist recorded Christina's
BMI to be 33.59. In light of her BMI on the
date of her surgery, her consistent weight
loss over a period of five months, and her
successful adoption of a healthy lifestyle,
Christina was not an appropriate candidate
for Roux en Y gastric bypass surgery. . . .
Because Christina did not meet the criteria
for gastric bypass surgery, the decision to
perform a laparoscopic Roux en Y gastric
bypass surgery on Christina was a clear
breach of the standard of care.

(Opp. Ex. A at 5-6.)

This letter provides sufficient factual information to

put the Government on notice of an informed consent claim.

The Ninth Circuit proclaimed in <u>Goodman</u>: ". . . [T]he

notice requirement under section 2675 is minimal, and a

plaintiff's administrative claims are sufficient even if a

separate basis of liability arising out of the same incident is

pled in federal court." <u>Goodman</u>, 298 F.3d at 1055. The Ninth

Circuit further held that "[t]he majority of circuits . . . have

held that to adequately exhaust administrative remedies with

respect to an informed consent claim, a medical malpractice claim

is not necessarily sufficient; instead, 'the administrative claim

must narrate facts from which a legally trained reader would

infer a failure to obtain informed consent.'" <u>Id.</u> (citing <u>Murrey</u>,

73 F.3d at 1453 <u>and</u> <u>Bush</u>, 703 F.2d at 495).

-16-

As discussed, the Hawaii Supreme Court has held that, when "determining whether particular information must be disclosed to a patient," the focus is "on what a reasonable person objectively needs to hear from his or her physician to allow the patient to make an informed and intelligent decision regarding proposed medical treatment." Ray, 125 Haw. at 267. Dr. Leitman, through his January 9, 2012 letter, provides his professional opinion as to the factors a reasonable person would need to consider before consenting to a RYGB surgery. At the hearing regarding the instant motion, the Government stated that Tripler doctors disagreed with Dr. Leitman's assessment as to the appropriate standard for proceeding with RYGB surgery and, consequently, did not disclose such information to Mettias. The discrepancy between the facts Dr. Leitman infers were necessary to Mettias's informed decision to have the surgery and those facts the Tripler doctors believed were necessary should have put the Government on notice that Plaintiffs were raising a claim that Mettias was not provided adequate information upon which to give her consent to the RYGB surgery.

Thus it was clear that Plaintiffs asserted or inferred certain information should have been provided to Mettias with which Tripler doctors disagreed and concededly did not give to her. Indeed, Dr. Payne testified during his deposition that the patient eligibility standards endorsed by Dr. Leitman were mere

"guidelines," or "suggested criteria that an individual patient might consider in consultation with their physician in choosing a course of treatment." (Opp. Ex. C at 40-41.)[6/] Again, under the patient-oriented standard adopted by the Hawaii Supreme Court, physicians are required to disclose information that "a reasonable person objectively needs to hear . . . to allow the patient to make an informed and intelligent decision regarding proposed medical treatment." Ray, 125 Haw. at 267. Importantly, by Dr. Payne's own statement, the patient eligibility requirements discussed by Dr. Leitman is information a reasonable person "might consider" when deciding whether to undergo a RYGB surgery.

In accordance with Goodman, factual assertions in Dr. Leitman's letter inferred that Mettias received inadequate information regarding the RYGB surgery, and his letter asserted

_____

[6/]Based on the portions of the deposition transcript attached to the parties' briefs, it appears that Dr. Payne did not expressly testify that he did not inform Mettias of the patient eligibility standards discussed by Dr. Leitman in his January 9 opinion letter. However, at the September 29, 2014 hearing, the Government stated that Tripler doctors did not inform Mettias that (according to Dr. Leitman) national medical standards dictated that she not undergo a RYGB surgery because her BMI was below 35 and because she was losing weight through non-surgical interventions. Further, the Court stated at the hearing that, at this time, it was not going to make a ruling on what constituted the correct standard, but that it did appear that Plaintiffs and Dr. Leitman inferred that Tripler doctors did not give Mettias sufficient information to make an informed consent which Plaintiffs claimed, rightly or wrongly, should have been given.

the type of information which a physician should provide to a patient as required under Hawaii's informed consent statute. Accordingly, the Government was on notice Plaintiffs were making an informed consent claim. Dr. Leitman's letter inferred that Tripler doctors did not inform Mettias just prior to her surgery that the risks of RYGB surgery outweighed the benefits if a patient has a BMI below 35 and has been losing significant weight through non-surgical programs. To the contrary, as Dr. Leitman pointed out in his subsequent letter dated May 6, 2014, Dr. Payne testified in his deposition that since Mettias met the BMI eligibility standard at the time she was admitted into the Bariatric Surgery Program in March of 2010, the national standard was not relevant in September, and consequently there was no need to raise the issue during the pre-operative appointments. (Opp. Ex. B at 41) (see also Mot. Ex. D at 96.)[7]

In essence, Dr. Leitman's initial letter inferred that Tripler doctors failed to provide Mettias with adequate information concerning the risks associated with the "proposed procedure," "recognized alternative treatments or procedures," and "[n]ot undergoing any treatment or procedure," as well as the

_____

[7]The Court notes that Dr. Payne testified in his deposition that at the "last visit" he conducted an informed consent discussion with Mettias and that "I know we talked about the risks and the benefits and the complications and all the aspects of what she had to look forward to and the alternatives of doing nothing." (Mot. Ex. D at 97.)

-19-

"benefits of the recognized alternative treatments or

procedures." H.R.S. § 671-3(b);[8/] <u>see also</u> <u>Ray</u>, 125 Haw. at 267

(holding that, under the patient-oriented standard, a physician

is required to disclose information that "a reasonable person

objectively needs to hear" in order for that person to consent to

a medical procedure). The Court reiterates Dr. Payne's admission

that Dr. Leitman's assertion of the patient eligibility standards

of the National Institute of Health was "<u>suggested criteria that</u>

<u>an individual patient might consider in consultation with their</u>

<u>physician in choosing a course of treatment</u>." (Opp. Ex. C at 40-

41) (emphasis added.)

Further, as in <u>Goodman</u>, Plaintiffs were "not required

to provide [Tripler] with a preview of the details of [their]

federal complaint, nor required to describe in more than minimal

detail the factual predicate for [their] claim."[9/] <u>Goodman</u>, 298

---

[8/]With respect to the latter two Hawaii statutory required
considerations, Dr. Leitman's letter asserted that the subject
surgery "is reserved for patients who, after a risk-benefit
analysis is conducted, are not likely to benefit from alternative
strategies but may benefit substantially from invasive surgery"
and that "[i]n this case, [Mettias] clearly was benefitting from
the non-surgical interventions offered through Tripler's LEAN
program." (Opp. Ex. A at 5.)

[9/]This Court recognizes that two factors distinguish <u>Goodman</u>
from the instant case. First, the <u>Goodman</u> court gave latitude to
the plaintiff, who was proceeding pro se during the
administrative claims process, in the presentation of his claims.
<u>See</u> <u>Goodman</u>, 298 F.3d at 1056. Second, in concluding "that the
government was fairly on notice that the informed consent claim
was before it," the <u>Goodman</u> court noted that the administrative
(continued...)

F.3d at 1056; <u>see</u> <u>also</u> <u>Murrey</u>, 73 F.3d at 1452 ("But as no
statement of legal theories is required, only facts plus demand
for money, the claim encompasses any cause of action fairly
implicit in the facts.") and <u>Burchfield</u>, 168 F.3d at 1255
(holding that "[a]n administrative agency is deemed to be on
notice not only of the theories of recovery stated in the claim,
but of the theories of recovery that its reasonable investigation
of the specific allegations of the claim should reveal").

Additionally, this Court's finding that the Government
was on notice of Plaintiffs' allegation that Mettias was not
adequately informed about the RYGB surgery is consistent with
pre-<u>Goodman</u> Ninth Circuit precedent, which supports a liberal
interpretation of § 2675's notice requirement. <u>See</u> <u>Rooney</u>, 634

---

[9]/(...continued)
agency filed a response explicitly addressing the issue of
informed consent. <u>Id.</u> at 1057. In this case, however, Plaintiffs
were represented by an experienced personal injury law firm
during the administrative claims process, and the Government has
not filed a response directly acknowledging that informed consent
is at issue.

Nevertheless, <u>Goodman</u>, in accordance with prior Ninth
Circuit precedent, held as a matter of law that "the notice
requirement under section 2675 is minimal, and a plaintiff's
administrative claims are sufficient even if a separate basis of
liability arising out of the same incident is pled in federal
court." <u>Goodman</u>, 298 F.3d. at 1055. <u>Goodman</u> further held that
"[t]he majority of circuits . . . have held that to adequately
exhaust administrative remedies with respect to an informed
consent claim, a medical malpractice claim is not necessarily
sufficient; instead; 'the administrative claim must narrate facts
from which a legally trained reader would infer a failure to
obtain informed consent.'" <u>Id.</u> (citing <u>Murrey</u>, 73 F.3d at 1453
<u>and</u> <u>Bush</u>, 703 F.2d at 495).

-21-

F.2d at 1241-42 (rejecting the government's argument that plaintiff's administrative claim alleging medical negligence did not encompass any claim for liability from the fall and holding that the administrative claim more broadly put the government on notice for claims arising from injuries sustained as a result of the fall"); and Broudy, 722 F.3d at 568-59 (holding plaintiff's administrative complaint alleging negligent exposure to radiation established subject matter jurisdiction for plaintiff's claim alleging failure to warn of radiation exposure).

In sum, the Court concludes that Plaintiffs, during the administrative claims process, put the Government on notice of their informed consent claim and, therefore, exhausted administrative remedies as to that claim. Accordingly, the Court has subject-matter jurisdiction over Plaintiffs' informed consent claim.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss as to Plaintiffs' informed consent claim.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, October 14, 2014.



Alan C. Kay
Senior United States District Judge

Mettias v. U.S., Civ. No. 12-00527 ACK-KSC: ORDER DENYING DEFENDANT'S MOTION
TO DISMISS AS TO PLAINTIFFS' INFORMED CONSENT CLAIM