IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CHRISTINA METTIAS, individually ) Civ. No. 12-00527 ACK-KSC
and as next friend of her minor )
son N.M.,                        )
                                 )
        Plaintiffs,              )
                                 )
    v.                           )
                                 )
UNITED STATES OF AMERICA,        )
                                 )
        Defendant.               )
_____ )

## ORDER DENYING PLAINTIFFS' MOTION TO EXCLUDE AND DEFENDANT'S MOTION IN LIMINE, AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO STRIKE

For the following reasons, the Court hereby DENIES the Plaintiffs' Motion to Exclude Expert Testimony, GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion to Strike, and DENIES the Government's Motion in Limine.

### BACKGROUND[1]

This case involves claims brought by Plaintiff Christina Mettias, individually and on behalf of her minor son N.M., (together, "Plaintiffs") for injuries Christina suffered after undergoing Roux-en Y Gastric Bypass ("RYGB") surgery at Tripler Army Medical Center on September 27, 2010. (FAC ¶ 1.) On

_____

[1] The facts as recited in this Order are for the purpose of disposing of the current motions and are not to be construed as findings of fact that the parties may rely on in future proceedings.

March 30, 2010, Christina voluntarily enrolled in the Tripler

Bariatric Surgery Program. At the time, she weighed 221 pounds

and had a Body Mass Index ("BMI") of 41.78. In association with

her enrollment, Christina participated in the LEAN Healthy

Lifestyle Program. Over the six months she spent in the LEAN

program, Christina lost approximately 34 pounds. On September 14,

2010, Christina met with Dr. John Payne of Tripler's Bariatric

Surgery Program to be evaluated as a candidate for RYGB surgery.

On the date of this meeting, she weighed 193.9 pounds and had a

BMI of 36.[2] In consultation with Dr. Payne, Christina decided to

opt for the surgery, which was performed on September 27, 2010.

Christina suffered numerous complications as a result

of the surgery, and this lawsuit ensued. Plaintiffs filed their

First Amended Complaint on April 1, 2014, asserting claims

against the United States of America ("the Government") for

medical negligence[3] as to Plaintiff Christina, and negligent

---

[2] It appears there was some confusion as to Christina's actual BMI on this date: because of an error in the recordation of Christina's height, the medical records on the date of the preoperative visit indicate a BMI of 34.4. When her actual height is used to calculate her BMI, it appears it was closer to 36 on the date of her preoperative visit. (Pl.'s Opp'n at 23-24.) Regardless, the parties agree that it was below 40 both at the time of her preoperative visit, and on the day of her surgery. (Def.'s Mot. at 4; Pl.'s Opp'n at 23-24.)

[3] In its October 14, 2014 Order Denying Defendant's Motion to Dismiss as to Plaintiff's Informed Consent Claim, the Court concluded that Plaintiff adequately exhausted administrative remedies as to the aspect of her negligence claim based upon a
(continued...)

infliction of emotional distress and loss of consortium as to Plaintiff N.M. (Doc. No. ("FAC") ¶¶ 26-33.) As is relevant to the instant dispute, Plaintiffs claim that, because Christina was able to lose weight and lower her BMI prior to surgery, she was not a proper candidate for the Roux-en Y procedure.

On October 6, 2014, Plaintiffs filed a Motion to Exclude Expert Testimony of Dr. Daniel Jones, along with several supporting exhibits. (Doc. No. 101.) On October 15, 2014, the Government filed its Motion in Limine to Exclude Testimony or Disqualify Plaintiffs' Expert Dr. I. Michael Leitman, also supported by a number of exhibits. (Doc. No. 107.) On October 28, 2014, Plaintiffs filed a Motion to Strike certain declarations in support of the Government's Motion in Limine. (Doc. No. 109). On December 23, 2014, the parties filed their respective memoranda in opposition to the motions, (Doc. Nos. 117, 118, 119,) and on December 30, 2014, both parties filed replies.[4] (Doc. Nos. 120, 121.) A hearing on all three motions was held on January 13,

---

[3] (...continued)
lack of informed consent. (Doc. No. 106.)

[4] The Court notes that, in their reply, Plaintiffs appear to ask the Court to make a ruling as a matter of law as to liability in this case. (See Pl.'s Reply at 4-5.) Leaving aside the fact that the dispositive motions deadline has long since passed, it should go without saying that such a request is entirely inappropriate in a reply memorandum, especially one filed in support of a motion to exclude a witness. Thus, to the extent Plaintiffs seek summary judgment as to the issue of liability in this case, any such motion is denied.

2015.

**STANDARD**

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony in the federal courts:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Courts have interpreted Rule 702 to require that "[e]xpert testimony . . . be both relevant and reliable." Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457, 463 (9th Cir.) cert. denied, 135 S. Ct. 55 (2014) (quoting United States v. Vallejo, 237 F.3d 1008, 1019 (9th Cir. 2001)). Relevancy simply requires that "[t]he evidence . . . logically advance a material aspect of the party's case." Cooper v. Brown, 510 F.3d 870, 942 (9th Cir. 2007). Reliability addresses whether an expert's testimony has "a reliable basis in the knowledge and experience of the relevant discipline." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149 (1999) (citation and alterations omitted).

"[E]videntiary reliability [is] based upon scientific validity." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 590 n.9 (1993). Courts are concerned "not [with] the correctness of

4

the expert's conclusions but the soundness of his methodology."
Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010) (citations
and quotations omitted). The duty falls squarely upon the
district court to "act as a 'gatekeeper' to exclude junk science
that does not meet Federal Rule of Evidence 702's reliability
standards." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982
(9th Cir. 2011).

The reliability inquiry is "a flexible one." Kumho
Tire, 526 U.S. at 150. The Supreme Court has suggested several
factors that may be used to determine the reliability of expert
testimony: "1) whether a theory or technique can be tested; 2)
whether it has been subjected to peer review and publication; 3)
the known or potential error rate of the theory or technique; and
4) whether the theory or technique enjoys general acceptance
within the relevant scientific community." United States v.
Hankey, 203 F.3d 1160, 1167 (9th Cir. 2000) (citing Daubert, 509
U.S. at 592-94). However, whether these specific factors are
"reasonable measures of reliability in a particular case is a
matter that the law grants the trial judge broad latitude to
determine." Kumho Tire, 526 U.S. at 153.

In cases of specialized, technical, or medical expert
testimony, "the relevant reliability concerns may focus upon
personal knowledge or experience." Id. at 150. "Because medical
expert opinion testimony 'is based on specialized as

distinguished from scientific knowledge, the <u>Daubert</u> factors are not intended to be exhaustive or unduly restrictive.'" <u>United States v. Sandoval-Mendoza</u>, 472 F.3d 645, 655 (9th Cir. 2006)(quoting <u>Sullivan v. United States Dep't of the Navy</u>, 365 F.3d 827, 834 (9th Cir. 2004). Accordingly, the proper test in evaluating medical expert testimony examines whether "physicians would accept it as useful and reliable." <u>Id.</u>

### <u>DISCUSSION</u>

Here, both parties seek to exclude the testimony of their opponents' experts. Plaintiffs seek to exclude the testimony of the Government's expert on the basis of bias and lack of reliability, while the Government seeks to exclude Plaintiffs' expert on the basis of lack of qualification and lack of reliability.

### I.   **Plaintiffs' Motion to Strike**

As an initial matter, the Court addresses Plaintiffs' Motion to Strike certain declarations in support of the Government's Motion in Limine. Plaintiffs argue that the declarations of Dr. Paresh Chandrakant Shah and Dr. Daniel B. Jones should both be stricken because they contain new and previously undisclosed expert opinions that were not properly disclosed in accordance with Rule 26 of the Federal Rules of Civil Procedure and the Court's Rule 16 Scheduling Order. (Pl.'s Mot. to Strike at 5.) Additionally, Plaintiffs argue that the

declarations are inadmissible under Federal Rules of Evidence 402
and 403 because they are irrelevant and may confuse the issues.
(Id. at 14, 24.) The Government counters that both declarations
are used for impeachment and rebuttal purposes under Rule 607 of
the Federal Rules of Evidence and, thus, are properly attached to
the Government's Motion. (Def.'s Opp'n to Mot. to Strike at 2,
8.)

Plaintiffs correctly note that, pursuant to the Court's
most recent Rule 16 Scheduling Order, Plaintiffs' expert
disclosures were due on May 6, 2014, and the Government's expert
disclosures were due on June 6, 2014. (Doc. No. 82.) Thus, to the
extent the declarations, which were filed on October 15, 2014,
contain previously undisclosed expert opinions, they are
untimely.

First, as to the declaration of Dr. Shah, the Court
concludes that it is being offered for purposes of impeachment,
and not as additional expert evidence going to the standard of
care in this case. Specifically, with Dr. Shah's declaration the
Government seeks to impeach Dr. Leitman's statements regarding
his personal experiences and practice in assessing patient
eligibility for bariatric surgery when he worked at Lenox Hill
Hospital. An examination of Dr. Shah's statements reveals that he
testifies exclusively as to the practices in use at Lenox Hill
Hospital for determining patient eligibility for bariatric

surgery at the time Dr. Leitman had hospital privileges there.
(See Def.'s Mot., Shah Decl.) He does not provide any additional
testimony as to the standard of care or patient eligibility
outside of that rebutting Dr. Leitman's own assertions as to the
practices at Lenox Hill Hospital. To the extent that Dr. Shah's
declaration contains only impeachment evidence, it is not subject
to the requirements regarding disclosure of expert testimony
under Federal Rule of Civil Procedure 26(a)(2). Moreover, the
general pre-trial witness disclosure requirements of Rule
26(a)(1)(A) expressly exempt from mandatory initial disclosure
information regarding a witness if that witness's statements
"would be used solely for impeachment." Plaintiffs' argument that
the Government failed to timely disclose Dr. Shah as a witness is
therefore without merit.

Moreover, Dr. Shah's impeachment testimony cannot be
characterized as irrelevant, as Plaintiffs claim. Dr. Shah was
the Chief of Laparoscopic Services and Program Director of the
General Surgery Residency at Lenox Hill Hospital at the time Dr.
Leitman was performing bariatric surgery there. (See id. at ¶ 1.)
As discussed above, Dr. Shah's statements focus only on the
bariatric surgery program's eligibility practices at the time Dr.
Leitman was performing surgery there and, thus, are properly
admitted to impeach Dr. Leitman's statements as to those
practices.

The Court notes, however, that, in addition to his testimony as to the practices at Lenox Hill Hospital, Dr. Shah also opines in his declaration as to Dr. Leitman's qualification as an expert witness in this case. The Court will disregard these statements as beyond the scope of impeachment evidence. The Court therefore GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion to Strike as to the declaration of Dr. Shah.

As for the declaration of Dr. Jones, the Government timely disclosed on June 6, 2014 the identity and written report of Dr. Jones, the Government's expert witness. With the exceptions noted below, it appears that Dr. Jones merely reiterates in his declaration the opinions he has previously provided in his expert report and deposition. Plaintiffs assert, however, that Dr. Jones's declaration should nevertheless be excluded because it is inadmissible under the Federal Rules of Evidence. Specifically, Plaintiffs assert that Dr. Jones's declaration may be excluded under Rules 402 and 403 because it contains statements that are "irrelevant, confuse the issues, and will not assist the Court in determining a fact in issue." (Pl.'s Mot. to Strike at 24.) The Court disagrees.

The issue before the Court on the instant motions is whether either of the parties' experts should be precluded from testifying at trial. In his declaration, Dr. Jones provides rebuttal evidence as to Dr. Leitman's previous statements

regarding patient eligibility for bariatric surgery. (See Def.'s
Mot., Jones Decl.) Dr. Jones's statements are therefore highly
relevant to the issues before this Court.

Moreover, the Court is unconvinced that Plaintiffs will
suffer any prejudice from admission of Dr. Jones's declaration.
As the Government points out, Plaintiffs had ample opportunity to
include with their memorandum in opposition to the Government's
Motion rebuttal declarations challenging Dr. Jones's statements.
Indeed, the Government's Motion in Limine was filed on October
15, 2014, and Plaintiffs' opposition was not due until December
23, 2014. Thus, Plaintiffs had just over two months during which
to prepare a response in rebuttal to Dr. Jones's declaration.
Further, Plaintiffs have been aware of Dr. Jones's identity and
the substance of his expert testimony since the Government's
initial disclosure in June of 2014. The Court therefore finds no
prejudice in allowing his declaration in support of the
Government's Motion in Limine here.

The Court notes, however, that Dr. Jones opines in his
declaration as to whether Dr. Leitman is qualified to provide
expert testimony as to the standard of care in this case. Because
this statement was not included in Dr. Jones's Rule 26 expert
report, it constitutes new expert testimony not previously
disclosed to Plaintiffs; the Court will therefore disregard this
portion of the declaration. Plaintiffs' Motion to Strike is

therefore GRANTED IN PART AND DENIED IN PART.

## II.  Plaintiffs' Motion to Exclude Expert Testimony of Daniel Jones, M.D.

In their Motion to Exclude, Plaintiffs seek to exclude at trial the testimony of Dr. Daniel Jones, the Government's liability expert. Plaintiffs argue that Dr. Jones's testimony should be excluded because (1) Dr. Jones has a conflict of interest in this case and is biased in favor of the Government, and (2) Dr. Jones's opinion regarding the eligibility standard for bariatric surgery is unsupported by any medical literature or other authority, nor is it experience-based, and, thus, it is unreliable.

### A.  Whether Dr. Jones's Testimony Should Be Excluded Based on a Conflict of Interest

First, Plaintiffs assert that Dr. Jones's testimony should be excluded because he has a conflict of interest in serving as an expert in this case. Specifically, Plaintiffs state that Dr. Jones is a friend of Dr. Robert Lim, the physician who headed the Tripler bariatric Surgery Program at the time of Christina's surgery. (Pl.'s Mot. to Exclude at 6.) Plaintiffs note that Dr. Lim and Dr. Jones are "extremely close," and that Dr. Lim himself suggested Dr. Jones as an expert to the Government's counsel. (Id.) Plaintiffs further assert that Dr. Lim was supervised by Dr. Jones during his clinical fellowship at Beth Israel Deaconess Medical Center, that they currently serve

together on the Patient Safety Committee of the American Society for Metabolic and Bariatric Surgery ("ASMBS"), that they have co-authored multiple articles and monographs, and that Dr. Jones is currently assisting Dr. Lim with a book. (<u>Id.</u> (citing Ex. 1 (Jones Depo.) at 30-32).)

While Plaintiffs make many arguments as to Dr. Jones's bias and, therefore, lack of credibility, these arguments are not appropriate for the Court's consideration on the instant Motion to Exclude. This Court has stated that an expert witness's "bias or credibility is an issue for jury and not an appropriate factor on which the Court may decide whether to admit an expert's testimony." <u>McDevitt v. Guenther</u>, 522 F. Supp. 2d 1272, 1295 (D. Haw. 2007) (citing <u>Slaughter v. Southern Talc Co.</u>, 919 F.2d 304, 306 n.2 (5th Cir. 1990) ("[A] district court may not base a decision to admit expert testimony upon its assessment of the credibility of the expert.")). Thus, to the extent Plaintiffs seek to exclude Dr. Jones's testimony based on his alleged bias or conflict of interest, their Motion to Exclude is DENIED.

**B.    Whether Dr. Jones's Testimony Should Be Excluded as Unreliable**

Plaintiffs next argue that Dr. Jones's opinion regarding the standard of care governing this case is unreliable because it is not supported by scientific evidence.[5/] Plaintiffs

_____

[5/] Plaintiffs do not assert that Dr. Jones is unqualified to
(continued...)

12

note that both their expert, Dr. I. Michael Leitman, and Dr. Jones generally agree that the standard of care governing the instant case is the patient eligibility standard for bariatric surgery formulated by the National Institutes of Health ("NIH") in 1991. (See Pl.'s Mot. to Exclude, Ex. 1 (Jones Depo.) at 33-35.) Under the NIH standard, "[p]atients whose BMI exceeds 40 are potential candidates for surgery if they strongly desire substantial weight loss, because obesity severely impairs the quality of their lives." (Id., Ex. 3 (Rule 26 Report of Dr. Leitman) at 14-15; Def.'s Mot. at 10.) Patients with BMIs between 35 and 40 "may also be considered for surgery" if they have "high-risk comorbid conditions[.]" (Id.) The American Society of Metabolic and Bariatric Surgeons ("ASMBS") has adopted the NIH standard, formulating it as follows:

Qualifications for bariatric surgery in most areas include:

1.  BMI [greater than or equal to] 40, or more than 100 pounds overweight.

2.  BMI [greater than or equal to] 35 and at least two obesity-related comorbidities such as type II diabetes (T2DM), hypertension, sleep apnea and other respiratory disorders, non-alcoholic fatty liver disease, osteoarthritis, lipid abnormalities, gastrointestinal disorders, or heart disease.

3.  Inability to achieve a healthy weight loss sustained for a period of time with prior weight loss efforts.

---

[5]/ (...continued)
testify as an expert.

13

(Def.'s Mot. at 10.[6/])

      Plaintiffs argue that Dr. Jones, while acknowledging that the NIH and ASMBS standards establish a standard of eligibility for gastric bypass surgery, nevertheless misinterprets them and thus gives expert testimony that is not based on any accepted medical authority. Specifically, Plaintiffs take issue with Dr. Jones's opinion that it was within the standard of care to perform bariatric surgery on Christina, even though her BMI had fallen to 36 by the date of her surgery and she had had some weight loss success in Tripler's LEAN program.

      In his Rule 26 expert report, Dr. Jones asserts that the NIH and ASMBS standards are used to assess patient eligibility for surgery at the time a patient enters a bariatric surgery program, but are not used to disqualify patients from surgery based on their BMI on the day the surgery is scheduled. (Pl.'s Mot. to Exclude, Ex. 4 (Rule 26 Expert Report of Dr. Jones) at 8-9.) Likewise, in his deposition testimony, Dr. Jones states that the criteria for bariatric surgery involve a BMI of 40 or higher with no comorbid conditions "when you entered the

_____

    [6/]  <u>See</u> NIH Office of Disease Prevention, NIH Consensus Development Program, Gastrointestinal Surgery for Severe Obesity: NIH Consensus Development Conference Statement (March 1991), *available at* http://consensus.nih.gov/1991/1991gisurgeryobesity084html.htm; ASMBS, Who is a Candidate for Bariatric Surgery, *available at* https://asmbs.org/patients/who-is-a-candidate-for-bariatric-surgery.

bariatric progam[.]" (Id., Ex. 1 (Jones Depo.) at 64.)

As to pre-surgical weight loss, Dr. Jones states that the standard of care simply requires that patients have tried and failed to lose weight through diet prior to undergoing surgery, but that there is no requirement that patients undergo a "medically supervised weight loss program" (as Plaintiffs' expert contends). (Id. at 106.) Moreover, Dr. Jones states that "it is not the standard of practice to deny weight loss surgery to patients who are able to diet and exercise in preparation for surgery," and that many patients are placed on liquid diets preoperatively. (Id., Ex. 4 at 5.) He also states that preoperative weight loss often makes surgery safer and prepares the patient to succeed in maintaining weight loss after surgery. (Id. at 4, 8; Ex. 1 at 107, 120.) Dr. Jones asserts that all of these statements are based on his knowledge of the aforementioned NIH and ASMBS standards, as well as his professional experience as current Vice Chairman of Surgery and Chief of Minimally Invasive Surgical Services at Beth Israel Deaconess Medical Center, former Director of the Bariatric Surgery Program at Beth Israel, and as a member of numerous professional associations focused on bariatric surgery. (Def.'s Opp'n, Jones Decl. at ¶ 1.)

The Supreme Court has made clear that courts are entitled to broad discretion when discharging their gatekeeping function under Rule 702. See Kumho Tire, 526 U.S. at 150-52.

15

Indeed, the Supreme Court has rejected any rigid interpretation of <u>Daubert</u> that would require "a schematism that segregates expertise by type while mapping certain kinds of questions to certain kinds of experts." <u>Id.</u> at 151. Thus, when considering the admissibility of testimony based on some "other specialized knowledge," such as medical expert testimony, Rule 702 is generally construed liberally, and courts are granted "latitude in deciding how to test an expert's reliability." <u>Hankey</u>, 203 F.3d at 1168 (quoting <u>Kumho Tire</u>, 526 U.S. 153). The test for reliability with respect to medical expert testimony is whether "physicians would accept [the expert's testimony] as useful." <u>Sandoval-Mendoza</u>, 472 F.3d at 655.

Here, Plaintiffs assert that Dr. Jones's opinion regarding the BMI and weight loss requirements for eligibility for bariatric surgery lacks reliability because it is not based on the articulated scientific standards. Importantly, however, the NIH and ASMBS standards do not contain any specific language regarding whether eligibility should be based upon BMI at the time of entering a bariatric program or at the time of surgery or the preoperative meeting (as Plaintiffs' expert asserts), or whether a previously unsuccessful weight loss attempt must be "medically supervised" to support eligibility for surgery. (<u>See</u> Def.'s Mot. at 9-10.) Rather, the eligibility criteria are set

forth in fairly broad language.[7] Thus, at issue here is how the medical community generally interprets the relevant eligibility standards.

In such a case, the reliability of Dr. Jones's testimony must depend heavily on his own knowledge and experience as a bariatric surgeon and a member of the bariatric surgery community, rather than on any specific methodology or scientific theory. <u>Hankey</u>, 203 F.3d at 1169; <u>see also</u> <u>Kumho Tire</u>, 526 U.S. at 150 ("Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases . . . . In other cases, the relevant reliability concerns may focus upon personal knowledge or experience.") (internal citations omitted); <u>Sullivan</u>, 365 F.3d at 833-34 (reversing the district court's exclusion of medical expert testimony, stating that the surgeon's application of broad principles to the case at issue based on his "experienc[e] in the field" was proper, and that the district court abused its discretion in requiring medical texts to match precisely the testimony of the medical expert).

As discussed above, Dr. Jones states that his opinions are based on his knowledge of the NIH and ASBMS standards, as

---

[7] Indeed, both experts admit in deposition testimony that there is no specific language in the relevant standards establishing the timing of the BMI assessment, or the necessity that previous weight loss efforts be medically supervised. (<u>See</u> Pl.'s Mot. to Exclude, Ex. 1 at 64, 97-100; Def.'s Mot. at 12-15.)

well as his experience as a bariatric surgeon and a member of numerous bariatric surgery professional societies. In his Rule 26 report, Dr. Jones references his own personal experience as a surgeon and chief of a bariatric surgery program when discussing the eligibility criteria for bariatric surgery, including with respect to the timing of the BMI assessment and the import of pre-surgical weight loss. (See Pl.'s Mot. to Exclude, Ex. 4.) Further, Dr. Jones also mentions information he has gathered from attending national meetings of relevant professional societies. (Id. at 6.) He specifically discusses the NIH standard in place at the time of Christina's surgery, and goes on to note recent developments in the medical community's views on the eligibility criteria.[8/] (Id. at 5-6.) While, as Plaintiffs point out, Dr.

---

[8/] Plaintiffs attempt to make much of a reference Dr. Jones makes in his Rule 26 report to the IFSO Position Statement on Bariatric Surgery in Class I Obesity. Plaintiffs assert that Dr. Jones's testimony was based solely on this position paper and, thus, is unreliable, as this single paper does not represent a consensus in the medical community, and does not support Dr. Jones's assertions. (Pl.'s Mot. to Exclude at 12-21.) An examination of Dr. Jones's Rule 26 expert report reveals, however, that Dr. Jones references this position paper only after citing the NIH standard and discussing the ongoing debate in the bariatric surgery community as to whether the BMI guidelines should be altered. He does not, as Plaintiffs assert, base his opinion as to the general standard for eligibility, or Christina's eligibility specifically, solely on the IFSO position statement. Rather, it appears he cites the IFSO position statement to bolster his assertions regarding common medical practices. (See Pl.'s Mot. to Exclude, Ex. 4 at 7; see also Ex. 1 at 109 (Dr. Jones's deposition testimony stating that his "opinions were formulated long before [he read the IFSO Position Statement]," and that he did not "rel[y] on it in formulating
(continued...)

Jones did state in his deposition that he had no "specific recollection" of performing bariatric surgery on a patient with a BMI of less than 40, this statement has little bearing upon the basis of his opinion regarding the timing of the BMI assessment in determining eligibility for bariatric surgery.[9]

Likewise, Plaintiffs' arguments regarding the practices of third party payors in refusing reimbursement for bariatric surgery under certain conditions (including in certain cases of preoperative weight loss) do not undermine the basis for Dr. Jones's testimony. The choice by some (but not all) third party payors to withhold coverage for bariatric surgery where there is preoperative weight loss does not represent the generally accepted practice of the medical community such that it undermines the reliability of Dr. Jones's testimony. (See Pl.'s Mot. to Exclude, Ex. 1 at 107 (Dr. Jones's deposition testimony stating that "insurance requirements vary all over the place" and are distinct from the medical community's preoperative standards).)

In sum, based upon Dr. Jones's background and experience and his explanation of the basis for his opinions, the

_____

[8] (...continued)
[his] opinions.").)

[9] This statement may, however, support Plaintiffs' position on the merits that it does not meet the standard of care to perform surgery on a patient with a BMI of less than 40 and no co-morbid conditions.

Court is satisfied that his testimony regarding the application of the NIH and ASBMS standards is sufficiently reliable. See Primiano, 598 F.3d at 567 (concluding that a medical expert's opinion was admissible based on his "background and experience, and his explanation of his opinion," and noting that "physicians must use their knowledge and experience as a basis for weighing known factors along with the inevitable uncertainties to make a sound judgment" (alterations omitted)); Sandoval-Mendoza, 472 F.3d at 654 (stating that Rule 702 "does not preclude the introduction of medical expert opinion testimony when medical knowledge permits the assertion of a reasonable opinion"); see also Kumho Tire, 526 U.S. at 149 (expert testimony is relevant "if the knowledge underlying it has a reasonable basis in the knowledge and experience of the relevant discipline" (alteration omitted)). Plaintiffs' Motion to Exclude is therefore DENIED.

## III. Government's Motion to Exclude Expert Testimony of Dr. I. Michael Leitman

In its Motion in Limine, the Government argues that Dr. Leitman's expert testimony should be excluded because Dr. Leitman is not qualified to testify as an expert in bariatric surgery, and because Dr. Leitman's testimony lacks reliability.

### A. Whether Dr. Leitman's Testimony Should Be Excluded for Lack of Qualification

First, the Court addresses Dr. Leitman's qualifications as an expert in the instant suit. The Government argues that Dr.

Leitman is unqualified to testify regarding medical negligence in offering RYBG surgery because he is a general surgeon without formal fellowship training in bariatric surgery, and is Chief of Surgery in a hospital that has not offered bariatric surgery since 2009. (Gvt.'s Mot. at 21.) Moreover, the Government notes, Dr. Leitman has not himself performed bariatric surgery, or RYGB surgery specifically, since "around 2009 or prior." (<u>Id.</u> at 23.)

"Determining whether a witness is an expert is ordinarily within the discretion of the trial court." <u>McClaran v. Plastic Industries, Inc.</u>, 97 F.3d 347, 357 n.8 (9th Cir. 1996). Rule 702 "contemplates a broad conception of expert qualifications." <u>Thomas v. Newton Intern. Enterprises</u>, 42 F.3d 1266, 1269 (9th Cir. 1994). As noted above, under Rule 702, an expert may testify "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "A witness is qualified as an expert by knowledge, skill, experience, training, or education." <u>Id.</u>; <u>see also</u> <u>McDevitt</u>, 522 F. Supp. 2d at 1290-91.

Here, Dr. Leitman clearly has specialized knowledge in the general field of surgery: he is a medical doctor licensed to practice medicine in the State of New York since 1986. He has been Board Certified in General Surgery since 1991, and in Surgical Critical Care since 1992. He is a Fellow with the

American College of Surgeons, as well as a Professor of Clinical Surgery and Chief of Graduate Medical Education at the Albert Einstein College of Medicine at Yeshiva University in New York. Since 2008, Dr. Leitman has been the Chair of the Committee on Surgical Quality Assurance and on the Patient Safety Committee at Beth Israel Medical Center, in addition to serving as the Chief of the Division of General Surgery at that hospital. He is also a Senior Attending Surgeon at Lenox Hill Hospital. (Pl.'s Opp'n, Leitman Decl., Ex. A.)

As to Dr. Leitman's qualification to testify regarding bariatric surgery in particular, the Court notes that the Ninth Circuit has stated that "an expert need not have official credentials in the relevant subject matter to meet Rule 702's requirements." United States v. Smith, 520 F.3d 1097, 1105 (9th Cir. 2008) (citing United States v. Garcia, 7 F.3d 885, 889-90 (9th Cir.1993)). Rather, an expert's lack of specific experience in the subject matter at issue "goes to the weight of his testimony, not to its admissibility." U.S. v. Little, 753 F.2d 1420, 1445 (9th Cir. 1984).

Nevertheless, the Court is satisfied that Dr. Leitman does, in fact, have sufficient expertise in the area of bariatric surgery specifically. Dr. Leitman has stated that he specializes in "complex and minimally invasive surgical procedures," with a "particular expertise in weight loss surgery, also known as

22

bariatric surgery, including surgical procedures such as the Roux en Y gastric bypass surgery . . . ." (Pl.'s Opp'n, Leitman Decl. ¶ 2 & Ex. A.) While Dr. Leitman has not performed weight loss surgery since 2009, he states that between 1992 and 2009 he performed approximately 500 weight loss surgeries, including "numerous" RYGP surgeries. (Id. ¶ 3.) Further, since 2009 he has continued to treat complications arising from weight loss surgery in his surgical practice, and to consult with patients considering bariatric surgery. (Id. ¶¶ 4-5.) Dr. Leitman has also published numerous scholarly articles related to weight loss surgery, and serves on a number of editorial and review boards for medical journals that publish in the area of weight loss surgery. (Id. ¶¶ 8-9 & Ex. A.)

In light of Dr. Leitman's extensive experience as a surgeon generally, and with weight loss surgery specifically, the Court is satisfied that he has sufficient scientific, technical, or other specialized knowledge to qualify him to assist the trier of fact in understanding the evidence or determining facts in issue. See Fed. R. Evid. 702. Any argument as to his lack of specific experience in the subject matter at issue "goes to the weight of his testimony, not to its admissibility." Little, 753 F.2d at 1445. Thus, to the extent the Government seeks to exclude Dr. Leitman's testimony on the basis of a lack of qualification, its Motion in Limine is DENIED.

**B.    Whether Dr. Leitman's Testimony Should Be Excluded
        As Unreliable**

The Government also argues that, even if Dr. Leitman is deemed qualified as an expert, his testimony should nevertheless be excluded because it is unreliable and unsupported by the relevant scientific evidence. The basis for the Government's reliability argument is essentially the same as that of the Plaintiffs in seeking to exclude the testimony of Dr. Jones: the Government argues that Dr. Leitman's opinions are based upon his unsupported interpretation of the NIH and ASMBS standards. (Def.'s Mot. at 10-11.)

As discussed above, under the NIH standard, "[p]atients whose BMI exceeds 40 are potential candidates for surgery if they strongly desire substantial weight loss, because obesity severely impairs the quality of their lives." (Pl.'s Mot. to Exclude, Ex. 3 (Rule 26 Report of Dr. Leitman) at 14-15; Pl.'s Opp'n at 12; Def.'s Mot. at 10.) Patients with BMIs between 35 and 40 "may also be considered for surgery" if they have "high-risk comorbid conditions[.]" (Id.) The ASMBS has articulated this standard as follows:

Qualifications for bariatric surgery in most areas include:

1.    BMI [greater than or equal to] 40, or more than 100 pounds overweight.

2.    BMI [greater than or equal to] 35 and at least two obesity-related comorbidities such as type II diabetes (T2DM), hypertension, sleep apnea and other respiratory disorders, non-alcoholic fatty liver

> disease, osteoarthritis, lipid abnormalities,
> gastrointestinal disorders, or heart disease.

>     3.    Inability to achieve a healthy weight loss sustained
>           for a period of time with prior weight loss efforts.[10]

(Def.'s Mot. at 10.)

In his Rule 26 expert report, Dr. Leitman asserts that these standards require that patients must be weighed and their BMIs calculated "on the day of surgery" or "at the time of [the] pre-operative meeting" in order to make a determination of eligibility for bariatric surgery. (Pl.'s Mot. to Exclude, Ex. 3 at 12, 26-27.) Dr. Leitman also opines that the standards require patients eligible for bariatric surgery to have "failed a medically supervised weight loss program." (Id. at 12,19-20.) The Government argues that neither of these statements are supported by the actual language of the NIH or ASMBS standards and, thus, Dr. Leitman's opinion is unsupported by the prevailing medical authority.

As discussed above, neither the NIH nor the ASMBS standard contains specific language detailing (1) whether the BMI of a patient must be calculated on the day of surgery, or on the

---

[10] The Government spends much ink arguing that Dr. Leitman's formulation of this standard as a "two-pronged test" is unsupported by the language of the NIH and the ASMBS. Acknowledging that the NIH and ASMBS do not actually use the phrase "two-pronged test," clearly here there are at least two relevant considerations (BMI and previous failed weight loss attempts), or "prongs," to the articulated standards. The Court therefore finds the Government's arguments against Dr. Leitman's short-hand phrase "two-pronged test" unpersuasive.

day of admission into the bariatric surgery program; or (2) whether the patient must fail a "medically supervised" weight loss program, or it is sufficient for the patient to have tried and failed to lose weight prior to surgery. Indeed, the parties do not dispute the actual language of the standards, and both parties acknowledge in their motions that the standards do not contain specific language regarding the timing of the BMI calculation or the necessity for prior weight loss attempts to be medically supervised. (See Def.'s Mot. at 10; Pl.'s Opp'n at 12; Pl.'s Mot to Exclude at 11-12, 22-23.) Thus, as was the case for Dr. Jones's testimony, because the standards do not have language specifically refuting or supporting Dr. Leitman's contentions, the reliability of his statements must depend heavily on his own knowledge and experience as a surgeon, rather than any specific methodology or theory. Hankey, 203 F.3d at 1169; Sullivan, 365 F.3d at 833-34.

As with Dr. Jones's statements, Dr. Leitman states that his opinion is based upon his knowledge of the aforementioned NIH and ASMBS standards, as well as his professional experience as a surgeon, a specialist in high risk surgery (including weight loss surgery), a clinician experienced in addressing complications from bariatric surgery, and a member of several editorial boards for publications addressing issues regarding gastrointestinal medicine. (Pl.'s Opp'n, Ex. A; Pl.'s Mot. to Exclude, Ex. 3 at

26

1.) In his Rule 26 report, Dr. Leitman includes an extensive discussion of the history, evolution, and content of the various relevant bariatric surgery standards. (Pl.'s Mot. to Exclude, Ex. 3 at 14-19.) His application of these standards to the facts of the instant case, as informed by his professional experience, was well within his role as a medical expert. See, e.g., Sandoval-Mendoza, 472 F.3d at 654 ("[Rule 702] does not preclude the introduction of medical expert opinion testimony when medical knowledge permits the assertion of a reasonable opinion.").

In sum, based upon Dr. Leitman's background and experience and his explanation of the basis for his opinions, the Court is satisfied that his testimony regarding the application of the NIH and ASBMS standards is sufficiently reliable.[11/] See

---

[11/] This case is clearly distinguishable from the unpublished Fifth Circuit opinion the Government cites to support its assertion that Dr. Leitman's testimony is unreliable. In that case, Dr. Leitman asserted that a needle used in a biopsy had penetrated through the plaintiff's breast, causing cardiac injury. This contention was not, however, supported by any factual evidence: both the testimony of the parties involved and the x-ray images conflicted with Dr. Leitman's contention. Further, Dr. Leitman admitted that he had not actually seen any of the images taken during the procedure. Thus, the Fifth Circuit concluded that the district court did not abuse its discretion in determining that Dr. Leitman's testimony was not reliable. Matosky v. Manning, 428 Fed. Appx. 293, 298 (5th Cir. 2011) (per curiam). Here, conversely, Dr. Leitman's testimony is not contradicted by the physical evidence, nor does it lack foundation in the facts of the case or the relevant medical literature; rather, his testimony consists of his application of the medically accepted standards for bariatric surgery eligibility to the facts of this case based on his professional experience doing so.

Primiano, 598 F.3d at 567 (concluding that a medical expert's opinion was admissible based on his "background and experience, and his explanation of his opinion"); Kumho Tire, 526 U.S. 149 (expert testimony is relevant "if the knowledge underlying it has a reasonable basis in the knowledge and experience of the relevant discipline" (alteration omitted)). The Court therefore DENIES the Government's Motion in Limine.

   As a final matter, the Court notes that in reaching its conclusion as to both of the instant motions it is ever mindful that "Daubert makes the district court a gatekeeper, not a fact finder." Sandoval-Mendoza, 472 F.3d at 654. On a motion seeking to exclude expert testimony, it is not for the Court to weigh evidence or make a determination on the merits as between conflicting expert opinions. Here, relying on the same medically accepted standards, the two experts appear to reach opposing conclusions as to whether the standard for surgery eligibility was met in this case. On the motions before it, it is not for the Court to make a determination as to which expert's opinion it finds more persuasive. See Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Rather, the Court's role is simply to assess the reliability of proposed testimony. As discussed above, expert testimony is

relevant "if the knowledge underlying it has a reasonable basis in the knowledge and experience of the relevant discipline." Id. (quoting Kumho Tire, 526 U.S. at 149) (alteration omitted). Here, for the reasons discussed above, the Court is satisfied that both of the experts meet that test.

**CONCLUSION**

For the foregoing reasons, the Court DENIES the Plaintiffs' Motion to Exclude Expert Testimony, GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion to Strike, and DENIES the Government's Motion in Limine.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 15, 2015



Alan C. Kay
Senior United States District Judge

Mettias v. United States of America, Civ. No. 12-00527 ACK-KSC, Order Denying Plaintiffs' Motion to Exclude, Granting in Part and Denying in Part Plaintiffs' Motion to Strike, and Denying Defendant's Motion in Limine