IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHRISTINA METTIAS, Individually and as Next Friend of Her Minor Son, N.M., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | CIVIL NO. 12-00527 ACK KSC <br><br><br> MEMORANDUM IN SUPPORT |

**MEMORANDUM IN SUPPORT**

**I.   INTRODUCTION**

Plaintiffs have retained I. Michael Leitman M.D. as their expert in bariatric surgery. Dr. Leitman has written a report dated May 6, 2014. He was deposed on July 29, 2014. The United States seeks to exclude and/or limit Dr. Leitman's testimony at trial because his opinions and testimony are overreaching, beyond his expertise, unreliable, and not credible. Further and more specifically, Dr. Leitman is not qualified to provide expert testimony regarding coding, Tricare billing, or the funding of medical services at Tripler Army Medical Center (TAMC) and he has no basis for his opinions that the TAMC Bariatric Surgery Program engaged in "false" coding of bariatric patients as "Morbidly Obese" during hospital admissions for

surgery in order to qualify them for surgery and receive reimbursement for unnecessary bariatric surgeries.

**II.  DR. LEITMAN'S OPINIONS DO NOT MEET THE TEST FOR EXPERT TESTIMONY UNDER *DAUBERT*.**

"*Rule 702 ... require[s] that [e]xpert testimony ... be both relevant and reliable.*" See Fed. R. Evid. 702.  Pursuant to Rule 702, the Court must exclude proffered expert testimony unless it is "*(1) based upon sufficient facts or data; (2) is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case.*" Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 588-591 (1993); Estate of Henry Barabin v. AstenJohnson, Inc., 740 F.3d 457, 463 (9th Cir. 2014)

Further, the court in Domingo v. T.K., M.D., 289 F.3d 600, 607 (9th Cir. 2002) held "*If trial court reasonably concludes that witness's conclusion does not follow from his analysis, it may properly exclude evidence as unreliable.*"

Also the court in Sterner v. U.S. Drug Enforcement Agency, 467 F.Supp.2d 1017, 1033 (S.D. Cal. 2006) held that "*There are three basic requirements that must be met before expert testimony can be admitted. First, the evidence must be useful to a finder of fact. Second, the expert witness must be qualified to provide this testimony. Third, the proposed evidence must be reliable or trustworthy.*"

In <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 147 (1999), the Supreme Court held that Daubert's "gatekeeping" obligation applied to all expert testimony and was not limited only to "scientific" testimony.

The above Daubert factors are not an exclusive list; courts may consider additional factors in determining whether a proffered expert's testimony meets the reliability requirement of Rule 702. See <u>United States v. Frazier</u> 387 F.3d 1244, 1262 (11th Cir. 2004) [(en banc), cert. denied, 544 U.S. 1063 (2005) (quoting Fed. R. Evid. 702 advisory committee's note (2000 amend.))]. In addition to the Daubert factors listed above, the Court may also ask "[h]as the proffered expert unjustifiably extrapolated from an accepted premise to an unfounded conclusion, i.e., that there is too great an "analytical gap" such that a 'leap of faith' is required?" <u>General Elec. Co. v. Joiner</u>, 522 U.S. 136, 143-46 (1997) The court in <u>Kennedy v. Collagen Corp.</u>,161 F.3d 1226, 1228 (9th Cir. 1998) also wrote ***"[t]he Court emphasized that the focus of the inquiry envisioned by Rule 702 must be on the principles and methodology underlying an expert's testimony, not on the conclusions. The Court later refined this language, explaining that [a] district judge may reject expert testimony where the 'analytical gap' between the data and the expert's conclusion is too great."*** {Emphasis Added]

3

The party offering the expert bears the burden of proving admissibility. Lust v. Merrell Dow Pharmaceuticals, Inc., 89 F.3d 594, 598 (9th Cir. 1996); Fed. R.Evid. 702, Advisory Committee Notes (2000 Amendments)(Party putting forward expert has the burden of proving that the testimony is reliable.).

Finally, **"[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"** [Emphasis Added] Frazier, at 1261 (quoting Fed.R.Evid. 702 advisory committee's note (2000 amends.))

Accordingly, "[m]ere reference to [an expert's] education and experience ... is not a substitute for failing to disclose the factual basis of the expert's opinion." Bloodsworth v. Smith & Nephew, Inc., 476 F.Supp.2d 1348, 1355 (M.D.Ala. 2006).

Under all of the reliability factors discussed above and the sworn deposition testimony of Dr. Leitman cited below, his testimony fails scrutiny under Daubert and its progeny.

### III. DR. LEITMAN'S OPINION ON "FALSE" CODING OF "MORBID OBESITY" BY TAMC IS ERRONEOUS AND NOT BASED ON FACTS.

Dr. Leitman's Report of May 6, 2014 at pages 34-35 states:

OPINION #4:

It was a breach of the standard of care for Tripler to code Christina as "morbidly obese" for purposes of obtaining payment for her Roux en Y gastric bypass surgery.

It is perplexing that neither Dr. Lim nor Dr. Payne seemed to have an understanding of how Tripler's Bariatric Surgery Program is funded.  Dr. Lim testified that "it's a service offered by the military," and explained that "there's no allotted funding" for surgeries performed through Tripler's Bariatric Surgery Program - "there's no extra money or reimbursement or something like that." [Lim, 19-24]. Dr. Lim stated his understanding that no submittal of any kind was required in order to obtain approval for bariatric surgical procedures performed at Tripler. [Lim, 23-24]. And, the Defendant's attorney, Mr. Yee, interrupted this line of questioning with the following statement:

I'm going to represent to counsel that within the constellation of services offered to active duty and dependents ... there's no additional charge for something like bariatric surgery.

Although Dr. Lim testified that TRICARE was not involved in approving or funding bariatric surgery performed at Tripler [Lim, 19-20], he confirmed that Tripler's Bariatric Surgery Program "still follow general guidelines." [Lim, 80].

Although Dr. Payne testified that in his medical practice he has never treated a patient whose form of insurance payment was through TRICARE [Payne, 70], he was interrupted by Mr. Yee when he was about to respond to the question of whether he had treated patients whose bariatric surgery was funded by TRICARE. [Payne, 71-72]. When finally allowed to respond to the question, he stated:  "I don't ask my patients who covers who provides their insurance when they come to our clinic. Whether or not they're TRICARE patients or not, I don't know; and I don't care." [Payne, 73].

I understand that there is a continuing effort by Plaintiff's counsel to determine how Christina's surgery was funded, and how bariatric

5

surgeries performed at Tripler were funded in general. I have reviewed a document that appears to be Tripler's submission to TRICARE justifying payment for Christina's "Laparoscopic gastroenterostomy." [Rivera TAMC 000001]. **This document erroneously reported that Christina had a "Principal Diagnosis" of "Morbid Obesity" which was "Present on Admission." This document violates the standard of care requiring accurate medical documentation. Moreover, it would be a breach of the standard of care and possibly fraud for Tripler to code Christina as "morbidly obese" on admission for purposes of obtaining payment for her Roux en Y gastric bypass surgery.**[Emphasis Added]

Even after Dr. Leitman reviewed the deposition of LTC

Christopher Wodarz (CFO of TAMC)[1], he continued to accuse TAMC of

---

[1]  Deposition of I. Michael Leitman M.D. July 29, 2014 at page:
                                83
17  Q.   In fact, that was the whole purpose of his
18  testimony was to ask him how the Bariatric Surgery
19  Program and services -- because the departments are
20  divided into services, not like subspecialties here --
21  how services get their funding.
22  Do you understand that they're funded out
23  of the general hospital budget, and there's no payment
24  for services rendered to whether they be military
25  dependents or actual active duty military?  There's no
                                84
1                I. M. LEITMAN, M.D.
2   payment to Tripler for those services.
3   **A.   If that was his testimony, I have no reason**
4   **to refute it.** [Emphasis Added]


                                91
Deposition of I. Michael Leitman M.D. July 29, 2014 at page:
                                91
13  Q.   You said you read Lieutenant Colonel
14  Wodarz's deposition after you completed your May 6, 2014
15  report.  Have you been asked to write a revision to your
16  report of May 6, 2014?
17  A.   No.
18  Q.   Do you intend to write a revision to your
19  report of May 6, 2014?
20  A.   I have not been asked, and therefore, I do

attempting fraudulent billing for Ms. Mettis' RYGB surgery. In deposition LTC Wodarz was questioned and testified as follows:

> Q. Now, does TRICARE come into this process at all where you're dealing with treatment provided to beneficiaries who are dependents at military treatment facilities where there is actually no payment that's going to be made?
> A. No, sir.
> Q. So, there is no report at all made to TRICARE in those circumstances?
> A. **There is no -- there is no interaction with TRICARE with services provided within our facility for our beneficiaries.** [Emphasis Added] (Wodarz Dep. Tr. 29:5-15.)

Even after having read the above from the deposition of LTC Wodarz, Dr. Leitman during his deposition continued to testify that

> **"It was a breach of the standard of care for Tripler to code Christina as 'morbidly obese' for purposes of obtaining payment for her Roux-en-Y gastric bypass surgery."** [Emphasis Added](Leitman Dep. Tr. 84:5-16.)

However, when questioned in light of his review of LTC Wodarz sworn testimony that TAMC does not bill for any medical services rendered to active duty military or their dependents (like Ms. Mettias), Dr. Leitman admitted to his lack of foundation for his opinion stating:

> ***"[t]he payment stream, again I'm not knowledgeable enough about payments to the medical center from TRICARE or anybody else. So I would prefer to not answer that question because I just don't know, but she was miscoded about her diagnosis being morbidly obese."*** [Emphasis Added](Leitman Dep. Tr. 84:16-22.)

---

21   not intend.

Further, Dr. Leitman admitted in deposition that other than the present case he has not reviewed or interpreted Tricare coding and billing rules and guidelines. (Leitman Dep. Tr. 27:9-29:3.)

Dr. Leitman's deposition testimony and likely trial testimony regarding Plaintiffs' claim of "False Coding" of "Morbid Obesity" as an alleged breach of standard of care in the present case in not based on the facts, since there is reliable sworn testimony to the contrary from an authoritative source (LTC Wodarz) that Dr. Leitman has read and disregarded without basis. Thus, Dr. Leitman opinions on this subject are unreliable speculation and not credible. Given the lack of foundation for his opinion on coding and Tricare rules and guidelines, Dr. Leitman's testimony on this subject does not qualify him as expert but rather "[a] layman, which is what an expert witness is when testifying outside his area of expertise," and "he ought not to be anointed with ersatz authority as a court-approved expert witness for what is essentially a lay opinion." White v. Ford Motor Co., 312 F.3d 998, 1008-1009 (9th Cir. 2002). By his own admission, Dr. Leitman has little or no experience with Tricare rules and guidelines of coding and billing and is therefore no expert on these subjects. His past and likely future testimony on this issue is neither credible nor reliable

8

and should be excluded or limited under the decisions in Daubert and its progeny.

**IV. CONCLUSION**

Therefore, the United States respectfully requests that the court grant its Motion *In Limine* No. 2 to exclude and/or limit Dr. Leitman's testimony for trial and/or disqualify him as an expert regarding coding, Tricare billing, or the funding of medical services at Tripler Army Medical Center (TAMC) and he has no basis for his opinions that the TAMC Bariatric Surgery Program engaged in "false" coding of bariatric patients as "Morbidly Obese" during hospital admissions for surgery in order to qualify them for surgery and receive reimbursement for unnecessary bariatric surgeries.

DATED: February 2, 2015, at Honolulu, Hawaii.

FLORENCE T. NAKAKUNI
United States Attorney
District of Hawaii

/s/ Harry Yee
By_____
HARRY YEE
Assistant U.S. Attorney

Attorneys for Defendant
UNITED STATES OF AMERICA