IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

CHRISTINA METTIAS, Individually, ) Civ. No. 12-00527 ACK-KSC
and As Next Friend of Her Minor )
Son N.M., )
            )
       Plaintiffs, )
            )
    v. )
            )
UNITED STATES OF AMERICA, )
            )
       Defendant. )
_____ )

## ORDER REGARDING MOTIONS IN LIMINE

For the following reasons, the Court hereby DENIES the Government's Motion in Limine No. 1, (Doc. No. 132); GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion in Limine No. 1, (Doc. No. 136); and DENIES Plaintiffs' Motion in Limine No. 4 (Doc. No. 139).

## BACKGROUND[1]

This case involves claims brought by Plaintiff Christina Mettias ("Christina"), individually and on behalf of her minor son N.M., (together, "Plaintiffs") for injuries Christina suffered after undergoing Roux-en Y Gastric Bypass ("RYGB") surgery at Tripler Army Medical Center on September 27, 2010. (FAC ¶ 1.) Plaintiffs filed their First Amended Complaint on April 1, 2014, asserting claims against the United States of

_____

[1] The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

America ("the Government") for medical negligence as to Plaintiff Christina, and negligent infliction of emotional distress and loss of consortium as to Plaintiff N.M. (Doc. No. ("FAC") ¶¶ 26-33.) The non-jury trial in this matter is set for February 24, 2015.

On January 15, 2015, the Court issued its Order Denying Plaintiffs' Motion to Exclude and Defendant's Motion in Limine and Granting in Part and Denying in Part Plaintiffs' Motion to Strike. (Doc. No. 130.) In that Order, the Court denied both parties' motions seeking to exclude the other's expert witness. On February 2, 2015, the Government filed two motions in limine: (1) Motion in Limine No. 1 to Exclude and/or Limit Testimony of Plaintiffs' Expert Paul R. Ernsberger, Ph.D; and (2) Motion in Limine No. 2 to Exclude and/or Limit Testimony of Plaintiffs' Expert I. Michael Leitman M.D. (Doc. Nos. 132, 133.)

On February 3, 2015, Plaintiffs filed five motions in limine: (1) Motion in Limine No. 1 to Preclude Defense Witnesses, Other than Dr. Jones, from Offering Opinions Regarding the Applicable Standard of Care; (2) Motion in Limine No. 2 to Limit the Testimony of Dr. Paresh Chandrakant Shah; (3) Motion in Limine No. 3 to Preclude the Government's Expert Witnesses from Providing Opinions Not Previously Disclosed; (4) Motion in Limine No. 4 to Exclude the Testimony of John Fountaine; and (5) Motion in Limine No. 5 to Exclude Evidence and Argument of Comparative

Negligence. (Doc. Nos. 136-140.)   The parties timely filed their respective oppositions to the motions in limine on February 10, 2015. (Doc. Nos. 157-161, 168, 172.)

A hearing on the motions was held on February 19, 2015. At the hearing, the Court granted the Government's Motion in Limine No. 2[2/] (Doc. No. 133), as well as Plaintiffs' Motion in Limine No. 2,[3/] and Motion in Limine No. 3. The Court also granted in part and denied in part Plaintiffs' Motion in Limine No. 5.[4/] (Doc. Nos. 137, 138, 140.) This Order addresses the remaining motions in limine.

---

[2/] In granting the Government's Motion in Limine No. 2, the Court ruled that it will limit Dr. Leitman's testimony regarding coding, Tricare billing, and the funding of medical services at Tripler, but that its ruling does not preclude Dr. Leitman from testifying as to other matters within his expertise as a surgeon, including as to Christina's diagnosis upon admission into the Tripler Bariatric Surgery Program.

[3/] The Court notes that in granting Plaintiffs' Motion in Limine No. 2, the Court holds that Dr. Paresh Chandrakant Shah may only testify for impeachment purposes at trial. Contrary to the Government's assertions at the hearing on the motions in limine, because the Government failed to comply with the disclosure requirements of Rule 26, including those applicable to expert rebuttal testimony, the Government may not introduce Dr. Shah's testimony for rebuttal purposes, or for any other purpose other than that of impeachment. See Fed. R. Civ. P. 26(a)(2)(D), 37.

[4/] The Court granted Plaintiffs' Motion in Limine No. 5 to the extent that the Court ruled that it will exclude any argument or evidence by the Government asserting that Plaintiff's preexisting obesity constituted contributory negligence. The Court otherwise denied the motion, to the extent Plaintiffs sought to entirely preclude any arguments as to contributory negligence.

<u>**DISCUSSION**</u>

**I.    The Government's Motion in Limine No. 1**[5/]

In its first motion in limine, the Government seeks to exclude or limit the testimony of Plaintiff's expert, Paul Ernsberger, Ph.D. Specifically, the Government argues that Dr. Ernsberger is not qualified to testify as to the eligibility criteria or standard of care for bariatric surgery.

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony in the federal courts. "Determining whether a witness is an expert is ordinarily within the discretion of the trial court." <u>McClaran v. Plastic Industries, Inc.</u>, 97 F.3d 347, 357 n.8 (9th Cir. 1996). Rule 702 "contemplates a broad conception of expert qualifications." <u>Thomas v. Newton Intern. Enterprises</u>, 42 F.3d 1266, 1269 (9th Cir. 1994). Under Rule 702, an expert may testify "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "A witness is qualified as an expert by knowledge, skill, experience, training, or education." <u>Id.</u>; <u>see also</u> <u>McDevitt v. Guenther</u>, 522 F. Supp. 2d 1272, 1290-91 (D. Haw. 2007).

Here, Plaintiffs plan to call Dr. Ernsberger as an

_____

[5/] The Court held a <u>Daubert</u> hearing on the Government's Motion in Limine No. 1 on February 23, 2015. (Doc. No. 187.)

4

expert in the areas of nutrition and nonsurgical weight loss, and Ernsberger states that he also plans to testify as to the issues of bioethics and informed consent in preventative medicine. (Gvt.'s MIL No. 1, Ex. 3 (Ernsberger Depo.) at 24-25.) Moreover, Dr. Ernsberger's Rule 26 Expert Report includes opinions regarding the eligibility criteria, informed consent requirements, and standard of care for bariatric surgery, and Plaintiffs' counsel stated during Ernsberger's deposition that his testimony would not be offered "strictly as an expert in the field of nutrition." (Id. at 45; see also Gvt.'s MIL No. 1, Ex. 2 (Rule 26 Report).) In their Opposition to the Government's motion, Plaintiffs assert that Dr. Ernsberger will provide "information concerning the standard of care for obesity management, grounded in the twin disciplines of science and ethics." (Pl.'s Opp'n to Gvt.'s MIL No. 1 at 2.) Thus, the Court must determine whether Dr. Ernsberger is qualified as an expert by knowledge, skill, experience, training, or education to testify as to these matters. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999); Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

Dr. Ernsberger is currently an Associate Professor of Nutrition, Pharmacology, and Neuroscience at Case Western Reserve University School of Medicine, a position he has held since 1998. (Gvt.'s MIL No. 1, Ex. 2 at 1.) He attended Northwestern

University School of Medicine, where he earned a Ph.D in Neuroscience and Pharmacology in 1984. (<u>Id.</u>) He completed postdoctoral training in Neurobiology at Cornell University Medical College, where he also served as an Assistant Professor of Neurobiology for several years. (<u>Id.</u>) Dr. Ernsberger is a member in a number of professional societies, including the American Society for Nutrition, the North American Association for the Study of Obesity, and the International Society for Molecular Nutrition. (<u>Id.</u>) He is also on the Board of Directors of the Association for Size Diversity and Health. (<u>Id.</u>) In light of Dr. Ernsberger's education and professional experience, the Court is satisfied that he is qualified to testify as an expert in the areas of nutrition and the nutritional aspects of treatments for obesity and obesity-related disorders.

As to his qualification to testify more generally regarding obesity management, including nonsurgical therapies for obesity and informed consent, the Court finds that Dr. Ernsberger is likewise sufficiently qualified to provide expert testimony as to these subjects. While Dr. Ernsberger is not a medical doctor or a licensed surgeon, and does not have any clinical experience performing bariatric surgery or otherwise caring for bariatric surgery patients, (<u>see</u> Gvt.'s MIL No. 1, Ex. 3 (Ernsberger Depo.) at 16-18, 92-94,) his testimony during the <u>Daubert</u> hearing established that he has significant experience teaching,

studying, lecturing, and publishing on the topic of obesity
management, including the risks and benefits of surgical and
nonsurgical weight loss, and informed consent.

For example, Dr. Ernsberger stated that, in his
position as an Associate Professor of Nutrition at Case Western,
he teaches courses to medical students on a number of topics,
including nutritional diseases (covering, among other things,
complications associated with gastric bypass surgery) and
bioethics (covering, among other things, informed consent and
medical decision making). (Doc. No. 190 (2/23/15 <u>Daubert</u> Hearing
Trans.) at 11-13, 15-16.) In addition, Dr. Ernsberger has taught
elective courses on topics such as "controversies in obesity,"
and "obesity, from cells to society." (<u>Id.</u> at 15-16.) Dr.
Ernsberger has also published numerous papers and given numerous
talks addressing obesity and obesity management. (<u>See</u> <u>Id.</u> at 17-
20; <u>see also</u> Gvt.'s MIL No. 1, Ex. 1 (Ernsberger CV) at 12-13,
22, 27-29, 34, 36.) In sum, based on Dr. Ernsberger's CV and his
testimony during the <u>Daubert</u> hearing, the Court is satisfied that
Dr. Ernsberger is qualified to provide reliable expert testimony
as to obesity management, including the risks and benefits of
surgical and nonsurgical weight loss, and informed consent.[6]

_____

[6] The Government also appears to argue, albeit in a cursory
manner, that Dr. Ernsberger's testimony as to the standard of
care is insufficiently reliable under Rule 702. Generally,
reliability addresses whether an expert's testimony has "a
                                            (continued...)

7

The Court therefore DENIES the Government's Motion in Limine No. 1, (Doc. No. 132,) insofar as the Court will allow Dr. Ernsberger's expert testimony on the topics covered in his Rule 26 expert report, including the topics of obesity management, the risks and benefits of surgical and nonsurgical interventions, and informed consent.

## II.  Plaintiffs' Motion in Limine No. 1

In their first motion in limine, Plaintiffs seek to preclude all non-retained expert defense witnesses, including Christina's treating physicians and health care providers at Tripler, from offering expert opinions regarding the applicable standard of care. Plaintiffs assert that, to the extent these witnesses will offer expert testimony, it must be excluded because the Government failed to timely disclose them as expert witnesses and provide written reports by them as required by Rule

---

<sup>6/</sup>(...continued)
reliable basis in the knowledge and experience of the relevant discipline." <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 149 (1999) (citation and alterations omitted). At the <u>Daubert</u> hearing, Dr. Ernsberger stated that his opinion was based upon, among other things, his own academic experience, as well as a review of relevant peer-reviewed publications, the NIH and ASMBS guidelines regarding bariatric surgery, and the VA/DOD guidelines regarding bariatric surgery. These sources, many relied upon by the other experts in this case that the Court has already found to be reliable, clearly demonstrate that Dr. Ernsberger's opinions are grounded in the "knowledge and experience of the relevant discipline." <u>Id.</u> Thus, to the extent the Government seeks to exclude Dr. Ernsberger's expert testimony on the basis of reliability, the Court finds that it is sufficiently reliable and DENIES the Government's motion.

26 of the Federal Rules of Civil Procedure.

Rule 26 requires litigants to disclose the identities of all expert witnesses. Fed. R. Civ. P. 26(a)(2)(A). This disclosure requirement applies to all witnesses providing expert testimony, including percipient witnesses with direct knowledge of the facts of the case. See Durham v. Cnty. of Maui, Civ. No. 08-00342 JMS-RLP, 2011 WL 2532690, at *3-*4 (D. Haw. June 23, 2011) (citing Musser v. Gentiva Health Servs., 356 F.3d 751, 758 (7th Cir. 2004) ("even treating physicians and treating nurses must be designated as experts if they are to provide expert testimony")); Motoyama v. Hawaii, Civ. No. 10-00464 ACK-RLP, 2012 WL 92150, at *2 (D. Haw. Jan. 10, 2012) (same). Non-retained experts must also provide a written report disclosing (i) the subject matter on which they will present evidence, and (ii) a summary of the facts and opinions to which they are expected to testify. Fed. R. Civ. P. 26(a)(2)(C).

Here, the following Tripler healthcare providers are listed on the Government's witness list as lay witnesses: Dr. John Payne, Col. Robert Lim, Yvette Williams, Maj. Timothy Plackett, Mark Verschell, Cpt. Xavier Pena, Dr. Nancy Smiley, Maj. Benjamin Wunderlich, and Andrew Ching. (Doc. No. 134.) As Plaintiffs point out, the Government has never identified any of these people as potential expert witnesses, nor has it provided any written reports by them. (See Doc. No. 84; Pl.'s MIL No. 1,

Exs. A-C.) The Government concedes as much, but asserts that no such disclosures were required because these medical providers will be called solely as percipient witnesses of the treatment they rendered. (See generally Opp'n to Pl.'s MIL No. 1.)

First, as to the requirement that the Government disclose the identities of all expert witnesses, the Government clearly failed to do so in violation of Rule 26(a)(2)(A). "According to its plain language, Rule 26(a)(2)(A)'s disclosure requirement applies to all witnesses providing expert testimony, including percipient witnesses such as treating physicians and others with direct knowledge of the facts of the case." Durham, 2011 WL 2532690, at *3. The testimony of a treating physician is not within the common knowledge of a lay person and comes, instead, within the medical provider's specialized knowledge. Thus, these witnesses are expert witnesses under Federal Rule of Evidence 702 and were therefore required to be disclosed pursuant to Rule 26(a)(2)(A).[7] Because the Government did not disclose

---

[7] To the extent the Government is asserting (via its witness list) that these medical providers may testify as lay witnesses pursuant to Federal Rule of Evidence 701, such that the Government need not disclose them as experts, the Court rejects this argument. Rule 701 allows lay testimony as to "opinions and inferences" only if, among other restrictions, they are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). This limitation, added to the Federal Rules of Evidence in 2000, "makes clear that any part of a witness's testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702
(continued...)

Dr. John Payne, Col. Robert Lim, Yvette Williams, Maj. Timothy Plackett, Mark Verschell, Cpt. Xavier Pena, Dr. Nancy Smiley, Maj. Benjamin Wunderlich, or Andrew Ching as expert witnesses, it has violated Rule 26(a)(2)(A). That is, because they are non-retained percipient experts, the Government was required — but failed — to disclose these witnesses as experts under Rule 26(a)(2)(A).

As to the expert report requirement, the parties do not dispute that none of the Government's non-retained percipient expert witnesses has filed a Rule 26 expert report; however, both acknowledge that treating physicians and medical providers are exempt from the requirement of a written disclosure to the extent that their opinions were formed during the course of treatment. See Pl.'s MIL No. 1 at 7; Def.'s Opp'n to Pl.'s MIL No. 1 at 7; see also Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011). A treating physician may testify without meeting the Rule 26 expert report requirements only to the extent that the physician's testimony is limited to his or her personal observations, diagnosis, and treatment of the plaintiff prior to the litigation. See Durham, 2011 WL 2532690 at

_____

[7/](...continued)
and the corresponding disclosure requirements of the Civil and Criminal Rules." Id., Advisory Committee's Note (2000). As discussed above, testimony by a treating medical professional is clearly based upon scientific, technical, or other specialized knowledge.

*3; <u>Soriano v. Wal-Mart Stores, Inc.</u>, Civ. No. 10-00023 SOM-LEK, 2010 WL 5464873, at *4 (D. Haw. Dec. 30, 2010). Thus, to the extent the challenged experts' testimony is limited to only their opinions formed during the course of treatment, the Government's failure to comply with Rule 26(a)(2)(C)'s expert report requirement is excused.

Having established the Government's disclosure obligations pursuant to Rule 26, the Court turns to the appropriate sanction for its violation of those obligations. Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that if a party fails to properly disclose an expert, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." <u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1107 (9th Cir. 2001). District courts have "wide latitude" to issue sanctions under Rule 37(c)(1). <u>Id.</u>

Here, the Court finds that the failure to disclose the foregoing providers as experts was not substantially justified. The Government had approximately a year and a half from the time this case was initiated to the date its expert disclosures were due. Moreover, the deadline to provide expert disclosures was

extended numerous times, and the identities of Christina's treating physicians and other medical personnel were known to the Government at least since the commencement of the suit. The Government therefore could easily have met its expert disclosure deadline in the exercise of due diligence.

As to whether the Government's violation of Rule 26 was harmless, factors the Court may consider are: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." Durham, 2011 WL 2532690 at *4. Here, the Court finds that the Government's failure to disclose the treating medical providers as experts is harmless. Allowing Christina's medical providers to testify as to their personal observations and opinions formed while treating her will not prejudice Plaintiffs, as Plaintiffs have already had an opportunity to depose all of the providers, and were likely aware that they would be witnesses at trial. Indeed, an examination of the depositions reveals that Plaintiffs questioned these witnesses extensively as to their opinions formed during treatment, including as to the standard of care they applied when treating Christina. Thus, while the Court finds the Government's failure to comply with Rule 26 in this case entirely indefeasible, because it concludes that Plaintiffs will

suffer no prejudice, it will nevertheless allow the Tripler medical providers to testify.

Insofar as the Court concludes that the Government's untimely disclosure of its percipient expert witnesses was harmless, the Court instructed the Government to file with the Court and provide to Plaintiffs a summary of the opinions to be offered by Christina's treating medical providers, as well as the relevant portions of their deposition testimony. On February 24, 2015, the Government did so as to Dr. John Payne, Col. Robert Lim, and Mark Verschell.[8] (Doc. No. 186.) Because these are the only witnesses for whom the Government provided such disclosures, the Court interpret's the Government's filing as indicating that it will only be offering the percipient expert opinion testimony of these three providers, and that the rest of Christina's providers will not be offering any opinion testimony at trial.

---

[8] The Court notes that on March 2, 2015, the Plaintiffs filed their Objections Regarding the Proposed Expert Testimony of Mark Verschell. (Doc. No. 196.) In the Objections, Plaintiffs reiterate their objection to Mr. Verschell testifying as to the standard of care for eligibility for bariatric surgery, the standard of care for preoperative weight loss for potential bariatric surgery patients, and the standard of care for providing informed consent. Plaintiffs state that they do not object to Dr. Verschell's testimony as a percipient witness regarding how the Tripler Bariatric Surgery Program operated and Christina's treatment in the program. (Id. at 5.) In light of the Court's ruling herein that Dr. Verschell may only provide his percipient expert opinion testimony as to his treatment of Christina and any opinions formed during the course of that treatment, the Court believes that Plaintiffs' March 2, 2015 Objection is moot. Nevertheless, the Court hereby clarifies that Plaintiffs' Objection will be sustained.

14

Thus, as to Dr. John Payne, Col. Robert Lim, and Mark Verschell, the Court DENIES Plaintiffs' motion insofar as it will allow them provide expert opinion testimony at trial; however, they may only testify as percipient witnesses about the basis for their treatment, diagnosis, and prognosis of Christina, as well as their opinions formed during the course of her treatment and the cause of her injuries.[9/] These witnesses may not, however, give expert opinion testimony based on information obtained outside of the course of their treatment of Christina. As to the rest of Christina's treating medical providers, the Court GRANTS Plaintiffs' motion insofar as they may not provide any opinion testimony at trial. The Court therefore GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion in Limine No. 1. (Doc. No. 136.)

**III. Plaintiffs' Motion in Limine No. 4**

In their fourth motion in limine, Plaintiffs seek to exclude the testimony of Mr. John Fountaine, an expert witness the Government plans to call to testify about Christina Mettias's future costs. On the issue of damages, Plaintiffs intend to offer at trial the testimony of, and life care plan prepared by, Kathy P. Smith. The Government intends to offer the expert testimony of Mr. Fountaine to critique the proposed life care plan prepared by

_____

[9/] See <u>Soriano v. Wal-Mart Stores, Inc.</u>, Civ. No. LEK, 2010 WL 5464873 at *4 (D. Haw. 2010) (stating that treating physicians who have not provided an expert report under Rule 26 may "testify regarding causation if [the] testimony was based on knowledge that [was] acquired during the course of treatment.").

Ms. Smith, and to offer his own life care plan. Plaintiffs assert that Mr. Fountaine's testimony is both irrelevant and unreliable and, thus, should be excluded pursuant to Rule 702.

First, as to the relevancy of Mr. Fountaine's testimony, under <u>Daubert</u>, an expert witness must "testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact at issue." <u>Id.</u> at 592; <u>see also</u> <u>Kumho</u>, 526 U.S. at 141 (citing <u>Daubert</u>, 509 U.S. at 597) (stating that the trial judge must ensure that all scientific testimony is both relevant and reliable). Here, Plaintiffs state that Mr. Fountaine's life care plan is based on the premise that ordinary costs associated with a complication-free gastric bypass should be excluded because Christina would have incurred those costs regardless of the alleged negligence of the Government. (Pl.'s MIL No. 4 at 3-4.) Plaintiffs assert, however, that these costs should not be excluded from an applicable life care plan because their claim is not that the surgery was performed in a negligent manner, but that the surgery should never have been performed at all. (<u>Id.</u>) Thus, Plaintiffs argue, Mr. Fountaine's life care plan, and any testimony based upon it, is not based upon the facts of the instant case.

Simply because Plaintiffs disagree with Mr. Fountaine's assessment of the case, however, does not mean his opinions are irrelevant. Mr. Fountaine holds a Master's Degree in

Rehabilitation Counseling and has practiced continuously in that field for more than thirty years. He is a Certified Rehabilitation Counselor and a Certified Case Manager and has substantial experience providing vocational assessments, vocational rehabilitation plan development, life care planning, and evaluations of service needs and injury impacts for people with disabilities. (See Pl.'s Add'l Exs. (Doc. No. 178), Ex. E at 1.) In reaching the conclusions in his Rule 26 expert report, Mr. Fountaine reviewed Christina's medical records from Tripler, as well as the medical records of numerous medical providers who treated her post-surgery. (Id., Ex. D.) He also consulted with Dr. Jones regarding Christina's care needs post-surgery, and reviewed Dr. Jones's expert report and Kelly Smith's life care plan. (Id.) Mr. Foutaine's testimony, based upon this information, is therefore highly relevant to the issue of Christina's future costs.

As to the issue of reliability, Rule 702 provides that a witness qualified as an expert may testify "in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." See Fed. R. Evid. 702. In Daubert, the Supreme Court proposed certain factors for evaluating the reliability of

scientific expert testimony: methodology, testing, peer review and publication, error rates, and "acceptability" in the relevant scientific community. See Daubert, 509 U.S. at 593-95. Plaintiffs assert that Mr. Fountaine used an unreliable methodology in preparing his life care plan. Specifically, Plaintiffs assert that Mr. Fountaine has no expertise in the area of assessing the needs of a person disabled by gastric bypass surgery, that he conducted no independent research into the likely future needs of Christina, and that he relied entirely on the opinions of Dr. Daniel Jones, the Government's expert witness. (Pl.'s MIL No. 4 at 4-5, 9-10.)

As to Mr. Fountaine's claimed lack of expertise, Rule 702 "contemplates a broad conception of expert qualifications." Thomas v. Newton Intern. Enterprises, 42 F.3d 1266, 1269 (9th Cir. 1994). Indeed, the Ninth Circuit has stated that "an expert need not have official credentials in the relevant subject matter to meet Rule 702's requirements." United States v. Smith, 520 F.3d 1097, 1105 (9th Cir. 2008) (citing United States v. Garcia, 7 F.3d 885, 889-90 (9th Cir.1993)). Rather, an expert's lack of specific experience in the subject matter at issue "goes to the weight of his testimony, not to its admissibility." U.S. v. Little, 753 F.2d 1420, 1445 (9th Cir. 1984). Thus, the fact that Mr. Fountaine does not have specific experience with assessing the needs of a person disabled by gastric bypass surgery in

particular does not make him unqualified as an expert.

As discussed above, based upon an examination of Mr. Fountaine's curriculum vitae, he is clearly qualified to testify as to the future life costs of a disabled person. Specifically, Mr. Fountaine has been working in his current position as a Rehabilitation Counselor and Case Manager at OSC Vocational Systems for approximately twenty years, and his work there has included life care planning and assessing the rehabilitation and independent living needs of injured and disabled persons. (See Pl.'s Supp. Exs., Ex. E at 1.) Thus, the Court is persuaded that Mr. Fountaine is sufficiently qualified to provide reliable testimony regarding Christina's future costs.

As to Mr. Fountaine's methodology, in his Rule 26 expert report, he states that he has followed the accepted methodologies and standards of practice in his field by looking to the medical providers to "define the nature and extent of impairment" and then "translate those limitations and recommendations to the world of work, independent living, coordination of future medical and rehabilitation services and the cost associated . . . ." (Pl.'s Supp. Exs., Ex. D at 2.) His Rule 26 report reflects that he examined the medical evidence before him and applied his own expertise in life planning to come up with his analysis and opinions.

Despite Plaintiffs' arguments to the contrary, Mr.

Fountaine's reliance on Dr. Jones appears to have been appropriate, in that he sought Dr. Jones's input to determine which services the medical community would deem medically necessary given Christina's condition. (See id.) As Mr. Fountaine is not a medical doctor, it was appropriate for him to rely upon one in formulating his recommendations. Indeed, as the Government points out, Plaintiffs' own life care planning expert also relied upon "consultations with health care professionals" in formulating her opinions. (See Gvt.'s Opp'n to Pl.'s MIL No. 4 at 2-3.) Thus, the Court is unpersuaded that Mr. Fountaine's methodology is unreliable.[10]

The Court acknowledges that Mr. Fountaine's proposed life care plan and expert report are quite thin in comparison to Ms. Smith's lengthy and detailed submissions; however, any such deficiencies go to the persuasiveness of Mr. Fountaine's testimony, rather than to his qualifications or the reliability of his methodology. On a motion seeking to exclude expert testimony, it is not for the Court to weigh evidence or make a

---

[10] Plaintiffs also appear to assert in their motion that the Government failed to identify an expert economist to provide testimony regarding the present value cost of the life care plan designed by Mr. Fountaine and, as such, his testimony cannot be used by the Court to assess Plaintiffs' damages. The Court notes, however, that the Government disclosed Laura Taylor, the Government's expert economist, on June 11, 2014. (Doc. No. 87.) While this expert disclosure was technically five days late, the Court finds no prejudice, as Plaintiffs have known the identity of the Government's expert economist for approximately eight months.

determination of persuasiveness as between conflicting expert opinions. See Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Rather, the Court's role is simply to assess the relevance and reliability of proposed testimony. As discussed above, "[e]xpert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry[, and] it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." Sandoval-Mendoza, 472 F.3d at 654 (quoting Kumho Tire, 526 U.S. at 149) (alterations omitted). Here, for the reasons discussed above, the Court is satisfied that Mr. Fountaine meets this test. Plaintiffs' Motion in Limine No. 4, (Doc. No. 139,) is DENIED.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Government's Motion in Limine No. 1, (Doc. No. 132); GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion in Limine No. 1, (Doc. No. 136); and DENIES Plaintiffs' Motion in Limine No. 4 (Doc. No. 139).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 6, 2015



_____
Alan C. Kay
Senior United States District Judge

Mettias v. United States, Civ. No. 12-00527 ACK KSC, Order Regarding Motions in Limine.